POTTS *vs.* WHITEHEAD.

1. A paper signed by A, by which he agrees that B, in consideration of $1 paid, shall have, for thirty days, the refusal of certain land therein designated, and that he will convey the same in consideration of $20 per acre, $500 to be paid on the execution of the deed, and the balance in a mortgage on the land, with interest at six per cent., no time being named for delivering the deed, nor any time for which the mortgage shall run, is not a contract, but only a refusal or offer of the lands to B at a certain price, and cannot be converted into a contract unless accepted within the thirty days.

2. An acceptance of an offer in writing to convey land within a certain time, in consideration of a price named, may be communicated by mail, but it must be actually placed in the post-office, directed to the proper place : if directed to a place where the party to be bound by it only sometimes resorts, it must be proved to have been received.

3. An offer in writing to convey land within a certain time, must be accepted within the time fixed.

4. A contract, any material part of which remains to be settled by negotiation between the parties, will not be enforced in equity on a bill for specific performance.

5. Where there was a written offer to convey land within a time fixed, at a price named, of which a portion named was to be paid on the execution of the deed, and the balance in a mortgage on the land, with interest at six per cent., *Held*—That the want of designation of any time when the great bulk of the consideration (that to be secured by mortgage,) was to be paid. left a material part of the contract to be settled by negotiation ; and hence, even if such offer had been accepted, a decree for specific performance would not be made.

The hearing was upon bill, answer, replication, and proofs.

*Mr. G. D. W. Vroom* and *Mr. P. D. Vroom*, for complainant.

*Mr. Leupp*, for defendant.

THE CHANCELLOR.

On the 7th of December, 1865, the defendant signed a paper drawn by the complainant, by which, for $1 recited to be paid, he agreed that the complainant should have, for thirty

days, *the refusal* of certain lands therein designated, and agreed that he would convey the lands embraced in the refusal, by a good and substantial deed, in consideration of $20 per acre; the terms to be $500 on the execution of the deed, and the balance in mortgage upon the land, with interest at six per cent. The defendant resided in the city of New York, and boarded with a Mrs. Libbey, at the corner of Jane and Hudson streets, but was frequently away, and when absent was much of the time with his sons, at South River, in this state. Many of his letters were directed to him there, through the post-office, and were received by him when there personally, and by his sons for him in his absence. Before the contract, he informed the complainant of his residence in New York, and also that a letter left for him at No. 14 West street, New York, would reach him; this information was given for some other business between them, and not in relation to this offer to sell these lands.

The complainant, on the 1st of January, 1866, having forgotten the street and number of defendant's residence, if it had ever been mentioned to him, made inquiries for his residence at several places where he thought the information could be had, and called at some house to which he was directed, in Hudson street, but it was not the defendant's residence, and so he failed to find him. On the 3d of January, 1866, he wrote to the defendant this letter:

"58 BROADWAY, NEW YORK, January 3, 1866.

My Dear Sir:—Have twice attempted the tender of the first payment of $500 upon the agreement made between us on the 7th of December last. I will meet you at any place you will name in the city of New York, at any hour after three o'clock of Friday, the 5th instant, or will be found at No. 9 Broad street, room No. 12, at three o'clock on Saturday, the 6th, when I shall be ready to make tender of the money and execute the proper agreements thereupon.

Very truly,

BENJ. C. POTTS.

Address me in care of Lewis P. Brown, 58 Broadway, by return mail."

Of this letter, he sent one copy addressed to the defendant at South River, New Jersey, and one directed to him at Northport, Long Island, which, he alleges, were the only other places of business of the defendant known to him. The complainant, in his own testimony, shows that he mailed these letters so directed, but does not say whether he mailed them by putting them in the post-office, or by putting them in the letter-box of his own office, or by handing them to the office messenger; and no other proof is offered of these letters being sent. In his bill he says that the agreements referred to in this letter, are the agreements necessary to be made as to the time of payment of the bond and mortgage to be given for the purchase money. This letter the defendant, in his answer and by his testimony, denies ever having received, and it is shown by other evidence that such letter was not received by defendant's sons, or at their place of business at South River, and the complainant testifies that it was never returned to him from the dead letter office. From this proof, the inference is strong that the letters were not placed in the post-office; and in the absence of any positive proof on that point, the case must be considered as if there was no proof of that fact.

The defendant, in his answer, which, in this respect, is responsive to the bill, and also in his testimony, states that he told the complainant, both before and at the time of signing this refusal, the number and street of the house where he lived in the city of New York; and both he and Mrs. Libbey testify that that was his residence, and that for more than a week before January 6th, 1866, when the time of the refusal expired, he was at home, and expected to hear from the complainant.

The paper signed by the defendant is not a contract, but on its face, and by its very terms, only a refusal or offer of the lands to the complainant at a certain price; this is not disputed by the counsel of the complainant. This, like all such offers, was not binding, and could not be converted into a contract, unless accepted within the thirty days. Whether

when such offer is made for a mere nominal consideration, the person offering can withdraw it within the time specified, it is not necessary to consider, as it was not withdrawn, and like all such offers it would be binding if accepted within the time, and before it was withdrawn.

The first question then is, whether the complainant's letter of January 3d, if it had been delivered or properly sent, is an acceptance of the offer so as to make it a contract. No other acceptance is relied on or proved. It is not, in terms, an acceptance. It is simply an offer to meet the complainant, and notice that he will then be ready to make the tender, and execute the proper agreements. If this refers, as is stated in the bill, to executing an agreement yet necessary to be made, as to the time of payment of the bond and mortgage for the balance of the purchase money, it shows that an important part of the essence of the agreement, the time for the payment of that balance, was not yet agreed upon, and as this *might be* upon demand, or postpone both principal and interest for one hundred years, the offer is to meet to agree upon this part of the contract. If the defendant had insisted upon a mortgage on demand, the complainant perhaps would not have paid the $500, and signed an acceptance of the refusal; if the complainant had asked that principal and interest be not payable for fifty years, defendant might not have assented; and above all there is no agreement in this letter to pay the money, and execute an acceptance of the refusal as it stood, but it only says I shall be *ready* to make *tender*, and execute the *proper* agreement. It doubtless might fairly be inferred from this letter, that the complainant intended to accept the offer in some way, and expected to enter into an agreement for the purchase of this property, at the price fixed; but he did not bind himself so to do. This letter comes within the decision of Vice Chancellor Kindersly, in a similar case, in which he held that such proposals to meet for the purpose of examining the lease which the complainant was preparing, was not an acceptance. *Warner* v. *Willington,* 3 *Drewry* 523.

The next question is, if this letter had been a sufficient acceptance of the offer or refusal, so as to bind the complainant to purchase at the price, whether this acceptance was communicated to the defendant within the thirty days. There can be no question but that when an offer is made for a time limited in the offer itself, no acceptance afterwards will make it binding. Any offer without consideration, may be withdrawn at any time before acceptance; and an offer which, in its terms, limits the time of acceptance is withdrawn by the expiration of the time; there is no authority, precedent, or principle, by which the time can be extended without consent of the person making it. The question whether an offer is accepted so as to make a legal contract, is a question of law. Courts of equity, on the question whether there is a contract, are governed by the same rules as courts of law; a contract which is legal, is so in both courts; if not binding, is not so in both. The remedy is different. The acceptance of an offer must be communicated to the person making it, or it is of no avail. It need not be communicated personally; an acceptance transmitted by mail is sufficient. But, in such case, it must be actually placed in the post-office directed to the proper place, within the time limited or before the offer is withdrawn. 1 *Parsons on Con.* 406; *Adams* v. *Lindsell,* 1 *B. & Ald.* 681; *Stocken* v. *Collin,* 7 *M. & W.* 515; *Dunlop* v. *Higgins,* 1 *H. L. C.* 381; *Hallock* v. *Ins. Co.,* 2 *Dutcher* 268; *S. C.,* In Error, 3 *Dutcher* 645.

But in the present case there is no proof that the letter was ever placed in any post-office. If the complainant had left notice of acceptance at the house of Libbey, or if, after he had been directed to leave any communication for defendant at No. 14 West street, he had left such notice there, it would have been a sufficient acceptance, although it had never reached the defendant. Were this a question of due diligence, which it is not, the complainant has hardly used it. He ought to have known and remembered the residence or address of a man with whom he made a contract, which depended upon notice of acceptance within a given time.

Potts *v.* Whitehead.

If the contract is once made so as to be legally binding, then a court of equity, which in certain cases holds that time is not of the essence of the contract, will often enforce it, although the complainant through mistake or accident or mere remissness, when not accompanied by fraud, has omitted to comply with it on his part within the time limited. The authorities referred to on the part of the complainant clearly establish that, but do not give the slightest support to the doctrine that the time of accepting an offer, fixed in the offer, can ever be extended.

On these two grounds, that the letter was not an acceptance of the contract, and that it was not sent in such manner as to be at law a notice of the acceptance, relief must be refused.

I am not satisfied that a notice sent to South River, in proper form and properly mailed, would be sufficient. A notice of acceptance, when mailed, and not received, must have been sent to the proper post-office. A notice to a resident of New York, while he was at his own home would not be sufficient if mailed to London, although he had been there a month previous; or to Newport or Saratoga, although he had spent the summer there, and had received his letters there.

The question arising from the want of designation of any time when the great bulk of the consideration was to be paid, was not raised on the argument, but is too prominent to be passed without notice. It is a substantial and material part of the contract. The value of the purchase money will be less by more than $5000, if the payment of it and the interest upon it were both deferred for ten years, than if it was paid in cash or secured by mortgage, with interest payable half yearly. This was not fixed by the written contract, had it been accepted; it was open for negotiation; and it is a settled principle that courts of equity will not enforce a contract of which any material part has to be settled by negotiation between the parties. *Fry on Spec. Perf.*, § 203. The bill must be dismissed.