## HENRY V. JOHNSON ET AL. V. D. PORTWOOD ET AL.

### No. 377.—Decided February 20, 1896.

**1.  Dissent of Judge of Court of Civil Appeals—Jurisdiction.**

Under articles 1040 and 1041, Revised Statutes, the dissent by a judge of the Court of Civil Appeals only becomes a basis for jurisdiction of the Supreme Court when the case has been finally decided. Such dissent confers no jurisdiction while a motion for rehearing is pending. (Pp. 243-244.)

**2.  Option—Specific Performance—Time Essential.**

In an option to acquire a right by doing a certain thing within a specified time, it is essential in order to secure the right that the holder of the option comply within the specified period. (Pp. 245-246.)

**.3.  Option—Statute of Frauds—Parol Testimony to Alter a Writing.**

In an option contract for obtaining a conveyance of land, the time within which the option may be exercised cannot be altered or extended by parol. If the contract be so corrected, even for mistake, then it would not be in writing, and cannot be enforced. (Pp. 247-248.)

**4.  Parol Contract—Specific Performance—Equitable Mortgages.**

An equitable mortgage cannot be created by an agreement not in writing. But where money was advanced by a third party upon agreement between vendors and a vendee of land, and by the vendee was paid to the vendors upon a parol agreement that the land should stand security to the party so advancing the money, the vendee being insolvent, it would work a fraud upon such third parties (the interveners) for vendors not to perform their contract, and it will be enforced. (Pp. 248-249.)

**5.  Parol Contract Affecting Writing.**

The rule preventing parties to a written contract from varying it by parol evidence does not apply to others than parties thereto. They are not precluded from proving the truth, however contradictory to the written statement of others. (P. 249.)

QUESTIONS CERTIFIED by Court of Civil Appeals for Second District, in an appeal from Tarrant County.

Suit upon six vendor's lien notes. The defendant pleaded an adjustment made in a former suit upon the notes, by which a cash payment was made and a further payment and the reconveyance of one-third interest in the land within 30 days promised. It was further alleged that the option had been extended to 60 days, and that within the extended time defendant had tendered the money and the reconveyance for the one-third of the land.

Intervener alleged that he, acting for the defendant, had made a contract with the plaintiffs by which the cash payment was to be made and reconveyance of one-third of the land and the further stipulated sum should be paid within 40 days; that the plaintiffs were anxious to realize

upon said notes; that the land on foreclosure would not bring the amount of the notes; that the defendant was insolvent and the insolvency known to plaintiffs; that intervener proposed to raise and did raise the amount of the cash payment, and had paid the same, and within the 90 days had tendered three-fourths of the deferred payment; that intervener was to have the two-thirds remaining interest in the land; that the defendant was willing to convey said two-thirds interest to intervenor; that he was ready to pay any balance unpaid upon the adjustment; that refusal to perform the contract would result in irreparable loss to intervenor, etc.

The court sustained demurrers to these pleas; judgment for plaintiffs. On appeal, reversed and remanded. Motion for rehearing was pending when the questions involved were certified.

The statement with opinion in the Court of Civil Appeals is here given:

TARLTON, CHIEF JUSTICE.—Suit brought April 2, 1892, in debt and for foreclosure of a vendor's lien, by D. Portwood, P. A. Huffman, and D. J. Nelson, against Henry V. Johnson. November 21, 1893, R. A. Long intervened, making common cause with the defendant, praying for specific relief. November 25, 1893, judgment for plaintiffs Portwood and Huffman against defendant Johnson for amount of their debt as sued for, less certain credits, and for foreclosure of their lien; for defendant Johnson against the plaintiff Nelson (on account of a settlement between them pending suit), and against the intervener Long. From this judgment the defendant and intervener appeal.

On August 19, 1890, D. Portwood, P. A. Huffman, and D. J. Nelson conveyed by deed to H. V. Johnson 236 acres of land, described by metes and bounds, out of the John Thornhill 640 acre survey in Tarrant County. In consideration of this conveyance, the grantee, Johnson, at that date executed and delivered to the grantors six promissory notes, each retaining the vendor's lien, maturing, three of them in one year and three in two years. Two of these notes, for the sum each of $4216.66, drawing interest at ten per cent from date, and providing in the event of suit for ten per cent of the whole as attorney's fees, became the property of D. Portwood. Two of them, for the sum of $2108.33 each, with similar provisions as to interest and attorney's fees, became the property of P. A. Huffman. The remaining two, each for $2108.33, with similar provisions, became the property of D. J. Nelson. The note of Portwood first maturing bears a credit of date January 19, 1892, of $3283.16. The note of Huffman first maturing bears a credit, of same date, of $1641.58, and the note of Nelson first maturing bears a similar credit.

On January 7, 1892, the plaintiffs herein instituted suit in the District Court of Tarrant County upon these notes against the defendant. On January 28, 1892, a payment of $6566.33 having been made by de-

fendant and credited upon the notes in the manner above indicated, the plaintiffs addressed the following letter to John C. Harrison, of Fort Worth, Texas:

"Fort Worth, Texas, Jan. 28, 1892.

"John C. Harrison, Esq.,

"Fort Worth, Texas.

"Dear Sir:—On final payment to you of $4256.40 and $6.85 interest on old notes, and interest from the 19th of January, 1892, please deliver to Robt. McCart, for account of H. V. Johnson, all notes held by you for account of D. Portwood, P. A. Huffman and D. J. Nelson against said H. V. Johnson. And turn over to said Robt. McCart the release deed hereto attached, upon delivery to you of a deed from H. V. Johnson to said Portwood, Huffman and Nelson for one-third of said real estate. Said H. V. Johnson is to have abstract brought down to date, of said property, showing that there has been no liens or incumbrances upon said lands since the same was purchased by said H. V. Johnson. Said money is to be paid by H. V. Johnson within thirty days from this date.

"(Signed.)    P. A. Huffman,
D. J. Nelson,
D. Portwood."

Accompanying this agreement or letter of instructions was a release deed of two-thirds of the land, signed by the payees of the notes, to be delivered to Johnson by Harrison, on compliance with the conditions named in the agreement.

On January 29, 1892, the parties to the suit brought January 7th signed the following agreement of dismissal:

"Portwood, Huffman & Nelson
vs.
"H. V. Johnson
} Suit pending in District Court, Tarrant County.

"The above case is to be dismissed at the cost of the plaintiff.

"(Signed)                                      D. Portwood,
P. A. Huffman,
D. J. Nelson.
"Wynne, McCart & Booty,
"Attorneys for Defendant."

The suit was accordingly dismissed.

The conditions named in the foregoing letter of instructions not having been complied with by the defendant Johnson, the plaintiffs, after the lapse of the thirty days there provided for, viz., on March 3, 1892, withdrew the letter of instructions and the release deed accompanying it, and instituted this suit, as already indicated. Pending the suit, and before the trial, the defendant settled with the plaintiff Nelson, the former paying in the settlement the two notes held by Nelson, and reconveying to the latter an undivided one-twelfth interest in the land.

*Opinion.*—1. The court sustained seven specific objections urged by

the plaintiffs as special exceptions, on the ground of alleged defects in the answer and trial amendment thereto filed by the defendant, Johnson. Of this action, as upon a general demurrer, complaint is made by the appellant Johnson in three assignments of error. Without setting out these assignments at length, it may be said that they assert the contention that the pleadings of the defendant condemned by the court present a defense to the plaintiffs' action in a two-fold aspect: (1) that they show that on January 28, 1892, the defendant paid to the plaintiffs the sum of $6566.33 in cash, and agreed to pay them within thirty days the sum of $4256.40, "besides certain interest," and to execute a deed for an undivided one-third of the land in question, and that this agreement or promise, and not the performance thereof (Railway v. Harriett, 80 Texas, 80), was accepted by the plaintiffs in full discharge and payment of the notes sued upon; (2) that in any event the defendant's averments show that at the date named the terms of settlement were agreed upon between the plaintiff and defendant, and that the latter had complied with these terms and the obligations thereby imposed upon him; in other words, that there had been an accord and satisfaction with respect to the notes sued upon.

In the opinion of the writer, the pleadings of the defendant, measured by the legal effect of the averment of the facts therein stated, and not by the mere conclusions of the pleader, negative the existence of either of these defenses. It is deemed unnecessary to detail the numerous allegations of the pleadings referred to. Suffice it to state that the instruments set out in our conclusions of fact, viz., the letter of instructions to Harrison, termed an agreement, and the dismissal of the suit of Portwood v. Johnson are, as exhibits A and B, made the basis of the defenses relied upon. Thus, it is alleged that, "The two papers, copies of which are hereto attached, together with those referred to in same, all have reference to the same matter and constitute parts of each other, and all together constitute the agreement of the parties for the settlement of said law suit as hereinbefore stated."

Looking, then, to the terms of the written agreement embodied in the letter to Harrison, does it appear therefrom that the plaintiffs agreed to accept any promise of the defendant in payment of the notes sued upon? Assuredly not, because it is plainly indicated that these notes are not to be surrendered until the performance within thirty days by defendant of certain conditions. The acceptance of the mere promise of the defendant as a payment of the obligations referred to is incompatible with the very terms of the instrument thus relied upon.

The writer is also of opinion that the defendant's averments, in the light of the terms of this written instrument, present at most the case of an accord without satisfaction. The agreement directs the surrender of the notes, provided that within thirty days the defendant will pay the sum of $4256.40, besides certain interest; that he will execute a deed to one-third of the land; and that he will present an abstract of the title to the property, showing that, since his purchase from the plaintiffs, no liens

or incumbrances had been placed upon it. The defendant's allegations show that he failed to comply with these conditions within the period stated. They show a tender of performance (with a refusal by the plaintiffs) for the first time on the 30th day of March, quite a month after the expiration of the stipulated term.

In Overton v. Conner, 50 Texas, 113, it is held that, to be operative, "The accord and satisfaction must be finally and fully consummated by the parties in accordance with its terms and stipulations." This case is approved and followed in Railway v. Gordon, 70 Texas, 80.

The writer sees no escape from the conclusion that, having failed to pay the money and otherwise to comply with the terms prescribed in the agreement, the defendant is entitled to no relief thereunder. Had a tender of compliance been made and refused during the period provided by the contract, this, it seems, under the doctrine prevalent here, would have been equivalent to a satisfaction of the award. Bradshaw v. Davis, 12 Texas, 336. But a tender after the lapse of that period should not in this instance suffice. Here it was within the option of the defendant to make or abstain from making the stipulated payment. His failure to exercise the option or privilege growing out of the agreement of the plaintiffs was attended by the creation of no cause of action in favor of the plaintiffs against him on account of the contract. The payment of $6566.33 at the date of the execution of the agreement was but the payment of less even than he then owed. If he deemed the agreement advantageous to him, it was his duty to comply with the conditions on which rested the exercise of his privilege.

Obligations were imposed by the contract upon the plaintiffs alone, a choice or a privilege arising out of it in behalf of the defendant. If the land involved had enhanced in value, so as to render it of advantage to the defendant to dispose of it on the day after the execution of the agreement by the plaintiffs, no reason is perceived why the appellant (as far as the plaintiffs are concerned) could not have conveyed it, unincumbered save by the vendor's lien retained in the notes herein sued upon. The agreement on its face was unilateral; time was of its essence, and after the lapse of thirty days from its date the defendant could not avail himself of it. Mining Co. v. Bullis, 68 Texas, 581; Houston v. Newsome, 82 Texas, 80; Shuffleton v. Jenkins, 1 Morr. (Ia.), 427; Jones v. Noble, 3 Bush (Ky.), 694.

It is contended, however, that other allegations of the defendant's answer require an interpretation of the pleadings different from that above indicated.

The defendant filed a trial amendment in which he averred that, "At the time of the execution of said agreement, it was understood by and between the plaintiffs and defendant that defendant was in truth and in fact to have as much as ninety days within which to pay the money, execute the deed and prepare the abstract mentioned in said agreement, exhibits A and B, should he require so much time."

This trial amendment was assailed by special exception as defective,

because it "seeks to alter and contradict the legal effect and the terms of the written agreement as set out by defendant."

It is questionable, in the writer's opinion, whether any assignment of error covers the action of the court on this special exception; but, if so, he is of opinion that it was properly sustained, on the familiar principle that evidence of a parol contemporaneous agreement will not be heard to contradict the terms of a contract in writing. As we have seen, the instrument described as exhibit A is treated emphatically, by the appellant himself, as an agreement in writing signed by the parties to be charged therewith. As such the defendant relies upon it as a basis for his prayer for specific performance of the contract to execute a release deed in accordance with the accord which it embodies, or which it is supposed to embody. Thus treated by the defendant himself, the writer is unable to regard this instrument as a mere memorandum made by one of the parties, but signed by nobody, and relating to the terms of a parol contract. Were it such a memorandum, it would of course be readily admitted that oral evidence could be heard, because, after all, there would be question only of a parol agreement. Lathrop v. Bramhall, 64 N. Y., 365; 1 Wharton on Evidence, sec. 77. But the averments of the defendant exclude, it would seem, the view that the instrument should be regarded as of no higher dignity than a verbal agreement.

The court also correctly overruled the motion of the appellant to reform the decree of foreclosure, so that it should apply to three-fourths, instead of eleven-twelfths, of the land. Title free of incumbrance to one-twelfth of the land had, pending the suit, vested, as all parties agree, in Nelson. Title to the remaining eleven-twelfths was therefore in the defendant, subject to the vendor's lien retained in the notes sued on. The lien extended to the entire eleven-twelfths interest, and was therefore properly foreclosed as to that quantity.

2. R. A. Long, intervener and appellant, assigns as error the action of His Honor in sustaining a general demurrer to his petition in intervention. It is contended that the averments of the intervener's petition show that, having advanced the money to the defendant to enable him to make the payment of $6566.33, and this under agreement with the plaintiffs that they would release an undivided two-thirds interest, which should thereupon be used as security for Long, the latter became thereby subrogated, as to the specified interest, to the lien of the plaintiffs, or that the transaction wrought an equitable assignment to the intervener of the claim of the plaintiffs against Johnson of their security upon the interest covered by the agreement.

The writer thinks that these propositions, if otherwise sound, are not applicable under the facts shown by the intervener's plea. The latter in terms adopted the averments of the defendant's answer. His cause became thereby tied to the case of the defendant. A common fate attended them. If the intervener was not a party to the agreement relied upon by the defendant, he was a beneficiary thereof only through the appellant, for whose direct advantage the contract was made. To the in-

tervener's plea, as to the defendant's answer, setting up a contemporaneous parol agreement to extend the time of performance beyond the term of thirty days, the court properly (as the writer thinks) sustained a special exception. Any agreement between the plaintiffs and the intervener was, as shown by his pleadings, dependent upon the terms of the contract made with the defendant. According to these, as interpreted by the writer, the defendant—and therefore the intervener—could expect no release of the two-thirds interest, the alleged security of Long, save upon the condition of the payment within thirty days of $4256. If time was of the essence of the agreement as to the defendant, it was necessarily so as to the intervener. To enjoy the proposed security, it devolved upon the latter to see that the defendant complied with the conditions on which the release was dependent. Neither alleged such a compliance.

With this interpretation of the pleadings of the appellants, the majority of this court do not concur. They are of the opinion that the court erred in sustaining the demurrers, and that the judgment should be reversed and the cause remanded. The reasons for their conclusion are stated by them in the following language:

"A majority of the court are of opinion that there was error in sustaining appellees' exceptions to the pleading of appellants Johnson and Long. They construe Johnson's answer as alleging in substance an agreement to cancel the previous trade by letting appellees (his vendors) have back one-third of the land upon his paying for the other two-thirds in the manner named, which required a payment of a portion of the sum earlier than it otherwise would have become due. There can therefore be no question as to the sufficiency of the consideration for this agreement. The letting appellees have back a part of the land, and the payment of a part of the sum agreed upon for the remainder before it otherwise would have been due, were each and both sufficient considerations to support a contract based thereon. Kirchoff v. Voss, 67 Texas, 320.

"The only question that remains then is, Was the stipulation in the letter of instructions to Harrison that "said money is to be paid by H. V. Johnson within thirty days," under the pleadings in this case, so much the essence of the contract as to preclude compliance therewith after that time? It will be observed that this letter is only signed by one of the contracting parties, and does not upon its face purport to be the contract itself, but only the usual instructions given the depositary of an instrument placed in escrow, for his guidance in making delivery; and if it is to be treated as the contract in this instance, so as to prohibit the introduction of parol evidence to add to its terms, it must be because the pleading unmistakably makes it such.

"That ordinary unsigned written memoranda of the general terms of a contract do not preclude the introduction of parol evidence to show the real agreement, seems well settled. Lathrop v. Bramhall, 64 N. Y., 365; Freeman v. Bartlett, 47 N. J. Law, 33; 1 Wharton on Evidence, sec. 77. In appellants' pleading, however, it must be conceded that there are

strong references to this instrument as embodying the terms of the contract, but it is distinctly stated in more places than one that it only does this in brief; and both in the amended original answer and in the trial amendment, it is stated to have been a part of the agreement that Johnson was to have as long as ninety days in which to make the deferred payment in case he desired it, and the majority conclude that parol evidence should have been admitted to sustain these allegations.

"What is stated above applies with redoubled force to the pleading of appellant Long. It is true, he adopts the answer of his co-appellant Johnson, but he also avers with distinctness that he acted in this transaction as the agent and friend of Johnson, and that he agreed to raise the money for the latter to make the $6566.33 cash payment, with the understanding that upon the payment of the $4256.40 two-thirds of the land should be released so that he could be secured thereby, and that Johnson should have as much as ninety days in which to make this payment. The majority think this pleading should at least have been held good as against a general demurrer, even though Long had been shown to be a party to the letter of instruction to the depositary of the escrow. It would of course be good if he was not a party thereto, for even in reference to formal written contracts it is said: 'The rule under consideration is applied only (in suits) between the parties to the instrument; as they alone are to blame if the writing contains what was not intended or omits that which it should have contained. It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others.' I Greenleaf on Evidence, 15 ed., sec. 279.

"By what has been said the majority do not wish to be understood as holding that the writing in question upon its face makes time so of the essence of the contract as that a court of equity should not relieve against the forfeiture upon a tender made within a reasonable time after the expiration of the stipulated period. It must be borne in mind that $6566.33 had already been paid under this contract. It is true, this payment was made upon a debt Johnson justly owed, and as to him it may be no injury would result by permitting appellees to retain it; but as to Long the case is different. He advanced the money for Johnson upon the understanding that he was to have security upon the land to be released by the next payment, of which appellees were well aware; and if Johnson is to be held to the exact day, this security must be lost. All the equities would therefore seem to arise in his favor that can be urged by any one who has made a payment and contracted for a conveyance to be made upon the making of another payment at a stipulated time.

"Upon this subject, in Pomeroy on Con., sec. 380, it is said: 'Where the clause provides for a forfeiture upon the nonpayment of the purchase price, at the time or times stipulated, and is, therefore, intended to secure punctuality in the payment, it has been regarded almost a matter

of course for a court of equity to disregard it, and to permit a subsequent payment, since interest is treated as a sufficient compensation for the delay.' Also see secs. 387, 388, 392, and 393, in the latter of which it is said: 'American cases hold that the vendor must also, when he elects to rescind the contract on this account (time made essential by stipulation), repay or tender the purchase money received, and return the collateral securities given to him by the vendee.'

"Our own decisions are numerous which require the vendor who retains the superior title to return payments received, before allowing him to rescind for the failure of the vendee to pay the balance due. Evans v. Bentley, 29 S. W., 497, and cases there cited. Also, which recognize the right of a vendee in such case, no matter how great the delay, to prevent a forfeiture by tendering payment with interest when sued for rescission. Tom v. Wollhoefer, 61 Texas, 277; Pierce v. Moreman, 84 Texas, 596. It is not necessary, however, that an authoritative decision be made as to this, and we leave the question open."

In accordance with the opinion of the majority of this court, the writer dissenting, the judgment is reversed and the cause remanded.

Filed October 26, 1895.

*Wynne, McCart & Booty*, for plaintiffs in error, cited: G., C. & S. F. R'y Co. v. Harriett, 80 Texas, 80; Lanes v. Squyres, 45 Texas, 386, 387; Mayfield v. Cotton, 21 Texas, 6; Bradshaw v. Davis, 12 Texas, 336; 2 Parsons on Con., 686, note "t"; Bishop on Con., sec. 1349; 2 Greenleaf on Evidence, sec. 31; Pomeroy on Spec. Per., sec. 1404-8.

*Wynne, McCart & Booty*, for intervener Long.—When the holder of a vendor's lien on land promises a third person that if he will furnish money to pay in part the debt of the debtor, a specified interest in the land so held as security by the lien holder shall be released to the debtor in order that it may be used as a security to the third person for the money to be advanced by him, and the third party advances money on the assurances so given by the lien creditor, he will be subrogated to the rights of the lien creditor as to the interest which the lien holder agreed to release. Oury v. Saunders, 77 Texas, 278; Texas Ld. & Loan Co. v. Blalock, 76 Texas, 85; Hicks v. Morris, 57 Texas, 658; Shelden on Subrogation, secs. 5-238.

*Hunter, Stewart & Dunklin*, for defendants in error.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District, seeking to have this court determine certain questions involved in the above stated case now pending in that court, have submitted for our consideration the following certificate:

"In this cause this court heretofore rendered a decision in which one of the judges thereof dissented to the conclusions of law expressed by the

majority ordering that the judgment be reversed and the cause be re-manded for a new trial. The grounds for dissent still adhered to are entered in the opinion of the court, a copy of which accompanies this certificate. The questions presented arise upon exceptions to the plead-ings of the appellants Henry V. Johnson and R. A. Long, and a copy of the pleadings of the parties, respectively, accompanies this certificate.

"The decision of this court was rendered when Head, A. J., was a member of this court. The questions for adjudication now arise upon a motion for rehearing pending in this court, in which Hunter, A. J., is disqualified. This certificate is made in accordance with an order of this court this day entered upon its own motion, Hunter, J., being dis-qualified and not sitting therein. Accordingly the points of dissent, which appear fully in the accompanying copy of the opinion, in connec-tion with the accompanying copy of the pleadings of the parties respec-tively, are respectfully certified to your Honors for decision, under the provisions of art. 1081c, Supp. Sayles' Tex. Civ. Stats.

"Should it be deemed that the certificate does not arise under the terms of said article, the very questions of difference, which appear as already indicated, are certified for decision to your Honors, under the provisions of art. 1081f, Supp. Sayles' Tex. Civ. Stats."

The questions upon which there was a dissent involved the correct-ness of the ruling of the trial court in sustaining demurrers to the special answer of the defendant and to a plea of intervention of his co-appellant. The certificate is accompanied with a certified transcript of the pleadings in the case, together with the dissenting opinion, which contains as well the grounds upon which the majority base their conclusion.

We think we have no jurisdiction to decide the questions as upon cer-tificate of dissent. The articles of the present Revised Statutes which confer jurisdiction upon this court to determine questions upon which the courts of Civil Appeals may certify their dissent, are as follows:

"Art. 1040. When any one of said Courts of Civil Appeals shall in any cause or proceeding render a decision in which any one of the judges therein sitting shall dissent as to any conclusion of law material to the decision of the case said judge shall enter the grounds of his dissent of record, and the said Court of Civil Appeals shall, upon motion of the party to the cause, or on its own motion, certify the point or points of dissent to the Supreme Court.

"Art. 1041. When a certificate of dissent is sent up by any Court of Civil Appeals it shall be the duty of the clerk to send up a certified copy of the conclusions of law upon which there is a division, and the original transcript, if so ordered by the Supreme Court, and thereupon, if the Supreme Court so direct, the clerk shall set down the same for argument and notify the attorneys of record."

The article first quoted evidently contemplates that the case shall be finally decided, before the dissent can be certified. A case is not finally decided as long as there is a motion for a rehearing undetermined. And, hence, we think our jurisdiction does not attach by reason of the dissent.

But, since the opinion, which accompanies the certificate and which is deemed a part of it, distinctly presents the questions upon which our decision is desired, and since we are requested to consider the same as a certified question, if not as upon a certificate of dissent, we think it our duty to comply.

We are of the opinion, that the exceptions to the pleadings of the defendant were correctly sustained. ·

In defense of the action, which was a suit upon certain promissory notes given by him to the plaintiffs for the purchase money of a tract of land, the defendant alleges in his answer an agreement entered into between him and the plaintiffs, at a time when a former suit on the notes was pending, for a satisfaction and discharge of the indebtedness. He alleges that, in consideration of a payment of $6566.33, the plaintiffs addressed a letter to one John C. Harrison, who, it seems, was a depositary of the notes, in which they directed him, upon payment of the sum of $4256.40 and interest and the reconveyance to the plaintiffs of a third of the land for which the notes had been given, to deliver up to the attorney of the defendant the notes, together with a release signed by them, which accompanied the letter. The letter of instructions directed, that the money was to be paid in thirty days. A copy of the writing was made a part of the answer. It was not alleged that there was any other writing evidencing the terms of the agreement. The answer avers a tender of the $4256.40 and interest after the thirty days had expired; but practically admits that no tender was made within that time.

We take it from the defendant's averments, that while the plaintiffs may, upon defendant's compliance with the terms of the letter of instructions, have been bound thereby, the defendant was not bound either to pay the sum therein mentioned or to convey the land. In the absence of some memorandum of the agreement, signed by him, he could not be compelled specifically to perform what the contract gave him the option to do. (Morris v. Gaines, 82 Texas, 255; Brock v. Jones, 8 Texas, 78; Crutchfield v. Donathon, 49 Texas, 691.) The agreement does not evince that anything but an option on his part was intended. He could do or not do, as it pleased him. In an ordinary contract for the conveyance of land, in which the purchase money is to be paid at a future day, time is not usually held to be of the essence of the contract. But when the transaction is in the nature of an unilateral contract—where a party is given an option to acquire a right by doing a certain thing within a specified time—it is held that time is essential, and that, in order to secure the right, he must comply within the specified period. This is settled law.

In addition to the authorities cited in the dissenting opinion, the following are also referred to as affirming the doctrine announced: Coleman v. Applegarth, 68 Md., 21; Harding v. Gibbs, 125 Ill., 85; Mason v. Payne, 47 Mo., 517; Stembridge v. Stembridge's Adm'n., 87 Ky., 91; Estes v. Furlong, 59 Ill., 298; Kerr v. Purdy, 51 N. Y., 629; s. c., 50 Barb., 24; Potts v. Whitehead, 20 N. J. Eq., 55; Brooke v. Garrod, 3 Kay

& J., 608; s. c., 2 De Gex & J., 62; 3 Pomeroy's Eq., 2d Ed., sec. 1408; n. 1.

But the defendant, in a trial amendment, also avers that the time expressed in the letter of instructions to Harrison is not the time actually agreed upon between the parties; and that in fact he was to be allowed ninety days in which to make the payment of the $4256.40. As before stated, the agreement involved a conveyance by the defendant of his interest in one third of the land to the plaintiffs. The promise to convey the land is within the statute of frauds. The conveyance of the land was a part of the consideration for the defendant's promise. If neither promise be in writing, neither can be enforced. Morris v. Gaines, supra; Brock v. Jones, supra. It follows that, if the letter is not evidence of the contract on part of the plaintiffs, the defendant has no contract which he can enforce. If the letter be relied upon as a memorandum of the plaintiffs' promise, enforceable under the statute of frauds, then it is a written instrument, the terms of which cannot be varied by parol evidence. If the defendant can show that ninety days was allowed, under the actual agreement, in which to make the payment, why may he not prove that only $400 was to be paid instead of more than $4000, or that in fact no land was to be conveyed? This we think clearly an attempt to vary the terms of a written instrument by parol evidence, and cannot be permitted. The skillful pleaders who drew the answer of the defendant, probably made the most of his case. They did not allege a mutual mistake in drawing the writings and seek to reform it, for the reason, in all probability, that the plaintiffs made no mistake. It would not have availed them to allege fraud, because the proof of that allegation would have destroyed the effect of the instrument for any purpose, and would have left them without any contract which could have been enforced.

But we think that the trial court erred in sustaining the demurrer to the plea of intervention. Briefly stated, the case alleged in the plea of intervention is in part that the intervenor acted as agent of the defendant in making the agreement with the plaintiffs; that they were anxious to secure a payment upon the notes; that the defendant was insolvent and had no money, as they well knew; that he agreed with the defendant to advance the money to make the cash payment, with the understanding that two thirds of the lands were to be released from the plaintiffs' claim, and that defendant was to convey to him the land so released or a sufficient amount thereof to secure him for the loan; that this was also known to the plaintiffs, and that the agreement as actually made was that the defendant was to have from sixty to ninety days, if he so desired, in which to pay the $4256.40. He also alleges in effect that the agreement was entered before the letter of instructions to Harrison was signed, and before the signing of an agreement between the plaintiffs and defendants dismissing the first suit, and that he was not present when they were signed. He also adopts the answer of the defendant.

But in addition to the foregoing, the pleading also contains the following averments:

"Intervener also told plaintiffs that it was understood between him and Johnson that the latter was to secure him in the repayment of said money by conveying to him the said two thirds interest in said land, or so much thereof as would compensate intervener for the $6566.33 advanced by him at the time of said settlement and for the sum of money for which he would have to become responsible in order to raise the sum of money thereafter to be paid; and intervener distinctly told plaintiffs that unless the settlement indicated in the exhibits attached to defendant's answer was to be a full and complete satisfaction of said notes, then he would pay no money and they could proceed with their suit against Johnson. Whereupon plaintiffs agreed with him that said settlement should be in full satisfaction of said notes if intervener should pay the sum of money he was then offering to pay, and that the suit then pending against Johnson should be dismissed, and it was further distinctly understood that intervener and Johnson should have, if they desired it, from sixty to ninety days to raise the sum of money now tendered by Johnson.

"Intervener further shows that, influenced by the said settlement and the assurances given by plaintiffs to intervener that a two thirds interest in said land should be the absolute property of defendant, he paid, of his own means, the sum of money paid at the time of said settlement, and has since then paid three fourths of the sum of money tendered by defendant to plaintiffs as shown in said answer and as is now tendered by him.

"Intervener further shows that, while defendant has not made him any deed to any portion of said land, or given him any lien thereon, that defendant is ready and willing at any time to secure intervener in the sums of money so advanced by him, either by a conveyance of said land or by giving him a lien thereon.

"Intervener further shows that at the time of said settlement it was well known to plaintiffs·that Johnson was insolvent, and that· said land would not if condemned to sell bring the amount of money due upon said notes, nor would it bring the sum of money which intervenor was offering to pay, and did pay, in order to effect said settlement."

. The prayer is: "That it be adjudged by the court that the settlement made on to-wit, January 28th and 29th, 1892, as indicated in Exhibits 'A and B,' part of defendant's answer, be adjudged to be in full satisfaction of the notes herein sued upon; that it be also adjudged that the sum of money now tendered by defendant is the only balance due upon said land; that it be adjudged that defendant is the owner in absolute title of an undivided two thirds interest in the whole of said land; and that it be further adjudged that plaintiffs Portwood and Huffman are entitled to three twelfths interest in said land (plaintiff Nelson having accepted, in pursuance of the terms of said settlement, from defendant, a deed to a one twelfth interest in said land); and that said notes be canceled and held for naught—that plaintiffs take nothing by this suit. Intervener further prays that, in case it be held that said settlement was not a satisfaction of said notes, and that plaintiffs Portwood and Huffman still have

a vendor's lien upon the whole of said land for the balance due thereon, that they, Portwood and Huffman, be adjudged to be indebted to intervener in the sum of three fourths of the money paid by him at the time of said settlement, with interest thereon from the time said was paid, and that intervener be subrogated to such a lien as said Portwood and Huffman had upon said land at and prior to the time of the payment of said money; and that it be adjudged that the said sum of money, in case said land should be condemned to sale to pay the balance due thereon, be adjudged to be sold subject to the prior lien of this intervener for three fourths of the sum so paid by him; and that it be also adjudged that said sum of money be paid to intervener before any portion of the proceeds of said land are paid to plaintiffs Huffman and Portwood; and intervener prays for all such other and further relief as, under the facts herein stated, he may be entitled to."

In so far as the intervener attempts to claim under the contract between the plaintiffs and the defendant, he is in no better position than the latter. Our decisions hold that an equitable mortgage cannot be created by an agreement not in writing. Castro v. Illies, 13 Texas, 229; Boehl v. Wadgymar, 54 Texas, 589. But had the intervener taken a mortgage from the defendant, he would, as to the right so acquired, have been in privity with the defendant, and would not be permitted to introduce parol evidence to vary the terms of the written memorandum. If the writing is to be discarded, then, as before said, the defendant had no contract which could be enforced under the statute of frauds, and hence the intervener, to the extent that he claimed through him, would have been in the same predicament.

But the averments which we have quoted from the plea of intervention present a different case. If it was agreed between the plaintiffs, the defendant, and the intervener, that the intervener should advance the $6566.33 for the defendant, and that upon defendant's paying the $4256.40 and interest, and conveying to the plaintiffs one third of the land within a specified time, the plaintiffs would release their claim upon the remaining two thirds, and that the intervener should have a lien upon such two thirds to secure the repayment by the defendant of the money so advanced, and if the defendant tendered the money and the deed to the third interest in the land, within the time so specified, then the intervener should be held subrogated to the lien of the plaintiffs as to the two thirds interest. Fievel v. Zuber, 67 Texas, 275; Dillon v. Kauffman, 58 Texas, 696; Flanagan v. Cushman, 48 Texas, 241; Harris Co. v. Campbell, 68 Texas, 22. Besides, the intervener was under no obligation to the plaintiffs to part with the money. The advancement of the $6566.33 upon the defendant's debt was a sufficient consideration to support the plaintiffs' promise, and if the statute of frauds for any reason should be held applicable to his contract, we think the payment of the money by him under the circumstances alleged was such a part performance as entitled him to its enforcement, so far as his rights are concerned. It is settled law in this court that, in case of oral contracts for the sale

of land the payment of the purchase money alone is not such part performance as will take the case out of the statute. The ground upon which a specific performance is enforced in such cases when there has been a part performance, is that the refusal of the defendant to perform would operate a fraud upon the plaintiff. When there has been nothing more done than the payment of the purchase money, the courts say that the vendee has a remedy by suit to recover it back. But in this case, unless the intervener be allowed his lien, he is without remedy for the recovery of his money. It was lent to the defendant, who is alleged to be insolvent. It has been paid to the plaintiffs upon a debt of defendant that was due, and they cannot be compelled to pay it back. It would be a fraud for them not to carry out their contract, at least in so far as it is necessary for the intervener's protection. In Malins v. Brown, 4 Comst. (4 N. Y.), 403, the plaintiff bought a tract of land, which, with other lands of his grantor, was subject to a mortgage. However, before the purchase, he demanded from his vendor, who was the mortgagor, that he should procure a release of the mortgage. It was thereupon agreed between the plaintiff, the mortgagor, and the mortgagee, that $700 of the purchase money should be paid to the mortgagee, and that he should release the mortgage as to the land to be sold. The $700 was paid to the mortgagee, and a conveyance taken from the mortgagor. The contract to release the mortgage was not in writing. The court waived the question whether the promise to release was within the statute of frauds of not, and held that if it was, the payment of the money under the circumstances was such a part performance as entitled the plaintiff to a performance of his contract. The case we think was correctly decided and is in point here.

That the intervener, in so far as he does not claim under the letter of instructions to Harrison signed by the plaintiffs and delivered to the defendant's agent, is not bound by that instrument, and can show that the real contract was for ninety days' time, is well settled by the authorities. The text from Greenleaf on Evidence quoted in the opinion of the majority of the Court of Civil Appeals is supported by the following cases: Krider v. Lafferty, 1 Whart. (Pa.), 303; Reynolds v. Magness, 2 Ired. (N. C.), 26; Cunningham v. Milner, 56 Ala., 522; Talbot v. Wilkins, 31 Ark., 411; Hussman v. Wilke, 50 Cal., 250; Edgerly v. Emerson, 23 N. H., 555; Langdon v. Langdon, 4 Gray (Mass.), 186; McMaster v. Ins. Co., 55 N. Y., 222. In the case last cited Mr. Justice Folger says: "The parties to a written instrument have made it the authentic memorial of their agreement, and for them it speaks the whole truth upon the subject matter. It does not apply to third persons, who are not precluded from proving the truth, however contradictory to the written statements of others. Strangers to the instrument, not having come into this agreement, are not bound by it, and may show that it does not disclose the very truth of the matter."

In determining the sufficiency of the pleadings in this case, we have not lost sight of the rule that it is not necessary to allege that a contract within the statute of frauds was made in writing. Here both the defend-

ant and the intervener aver that the two certain instruments, which were made part of the pleadings, were in writing and duly signed, and do not allege that the previous agreement was written. The inference is that that agreement was merely oral; and it has been so treated both by the parties and the courts below.

*Reversed and remanded.*