## OIL WELL SUPPLY CO. v. BURK–WAGGONER OIL CO. et al. (No. 2292.)

(Court of Civil Appeals of Texas. Amarillo. March 19, 1924. Rehearing Denied May 14, 1924.)

**1. Corporations ⊚⊐619—Director presumed authorized to sign renewal note after dissolution.**

In action on corporation's renewal note signed by director thereof after its dissolution, it will be presumed, in the absence of plea of non est factum, that such director had authority to sign, since after dissolution directors become trustees for dissolved corporation.

**2. Evidence ⊚⊐434(8)—Facts held to show legal fraud, rendering admissible parol evidence of contract to assume debts.**

Where W. and G., directors of oil company, orally agreed to assume company's debts in consideration of conveyance of its property, and W. later had the vice president convey the property to G. in consideration of G.'s assuming debts, but W. later received from G. conveyance of the company's property for paying a company note, held, in an action on another company note, by a stranger to the first transaction, that G.'s acts constituted legal fraud, rendering admissible evidence of the parol agreement by W. and G. to assume the company's debts as against contention that the agreement was merged in the later conveyance to and assumption to G. alone.

**3. Evidence ⊚⊐434(8)—Fraud, rendering parol evidence admissible, properly pleaded by alleging facts showing fraud.**

Fraud rendering admissible parol evidence of the real transaction not disclosed by the contract of the parties, is sufficiently pleaded by pleading facts which, if true, amount to fraud, without alleging fraudulent intent.

**4. Evidence ⊚⊐424—Stranger to instrument may show that it does not express the whole agreement.**

A stranger to an instrument, not having assented to the contract, is not bound by it, and may show that the written instrument does not express or contain the whole agreement.

Appeal from Wichita County Court; Guy Rogers, Judge.

Action by the Oil Well Supply Company against R. M. Waggoner and others. From a judgment in favor of named defendant and against the others plaintiff appeals. Reversed and rendered.

Fischer & Fischer, of Wichita Falls, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellees.

RANDOLPH, J. This suit was brought by appellant, as plaintiff, against the appellees as defendants, in the county court of Wichita county. From a judgment in its favor against Burk-Waggoner Oil Company, and against it and in favor of R. M. Waggoner, the plaintiff has perfected its appeal to this court.

The plaintiff's suit was based upon a note for $402.55, payable to the order of plaintiff and signed by Burk-Waggoner Oil Company by Clois L. Green, and also by Clois L. Green individually, and plaintiff also seeks recovery upon said note against R. M. Waggoner, by reason of the facts alleged by it, that R. M. Waggoner became liable and bound to pay said note for the reason that Burk-Waggoner Oil Company sold and transferred all of its assets, property and buildings, to defendant R. M. Waggoner and to Clois L. Green, for a valuable consideration, part of which consideration was that the said Waggoner and Green agreed to accept, assume and pay off any and all indebtedness incurred by the Burk-Waggoner Oil Company, of whatsoever kind and character. That at the date of said transfer and sale from said oil company to Waggoner and Green, said note was a bona fide and valid, existing obligation against said oil company and was assumed by Green and Waggoner. Plaintiff further alleges that Green had filed a voluntary petition in bankruptcy, and that all of said Green's assets are in the hands of the United States District Court for the Northern District of Texas.

Waggoner filed his answer containing general demurrer and general denial.

Plaintiff filed his first supplemental petition, which presents the further cause of action in support of, and in addition to, that set out, and alleges that after the plaintiff had sold its goods, wares, and merchandise to said oil company, for which debt this note sued on was given, that Waggoner and Green, jointly and severally proposed to the directors of the oil company to take over and accept all of the property and assets, real and personal, of said oil company, and that in consideration therefor they (Green and Waggoner) would assume and pay off all the existing indebtedness of the oil company; that said proposal was verbally made at a called meeting of said directors, of which Green and Waggoner were members, and that the board of directors accepted said proposal at that meeting, both Waggoner and Green being present at the time of such acceptance; that a record in writing was made upon the minute book of the company by the secretary and vice president of the company; that immediately thereafter, and within two or three days after said

meeting, a transfer to said Green was made in pursuance of their contract, said transfer to Green personally being made at the request of Waggoner.

Waggoner, in his first amended answer, demurs generally and specially, denies generally the allegations of both petitions, and denies that he ever assumed payment of the note sued on, and specially denies that he or any one authorized to act for him, ever agreed to take over the real and personal property of the oil company, and denies that he ever made such proposition, and specially pleads that the contract of assumption, as pleaded by plaintiff, comes within the statutes of fraud and is unenforceable. He specifically denies that he ever accepted or received any such property of the oil company, and pleads that he received no benefit of any kind from the transfer to Green by the oil company.

The trial court made the following findings of fact, in substance: (1) That at a directors' meeting of the company, called for the purpose of winding up its affairs, it was agreed that the company would transfer to Waggoner and Green its assets in consideration of their assuming its liabilities; the vice president of the company being directed to execute the proper transfer to them. (2) Before the transfer was made, which property was both real and personal, R. M. Waggoner advised the company's vice president to make the assignment to Clois L. Green, which was done, and Green went into possession of the property in its entirety and in his own right. (3) Some months thereafter, in consideration of the payment by Waggoner to the Wichita Bank & Trust Company for the account of Burk-Waggoner Oil Company, of the sum of $60,000, Green transferred to Waggoner a part of the assets which he obtained under the assignment from the company prior to and besides which Waggoner received no part of the company's assets. Waggoner and Green were not partners in this enterprise and are not sought to be held as such.

Upon these findings the trial court made the following conclusions of law:

"The court is of the opinion that under the law of this state parol testimony is not admissible to vary the terms of the written assignment, which testimony appears in the transcript for the information of the Court of Civil Appeals; that R. M. Waggoner cannot be required to answer for the company which he agreed to assume before advising the company's vice president to make the assignment to Clois L. Green, the contract being executory at the time it was reduced to writing with Clois L. Green, transferee; that, prior to the merger of parol understandings into an instrument required by common law to be under seal, the verbal agreement of Waggoner to purchase real estate was unenforceable, and not having obtained a legal benefit from nor suffered a legal detriment to the company prior to the execution of the conveyance, and the company having conveyed in writing its assets to Clois L. Green, in consideration of his assumption of its debts, the defendant is not estopped from asserting his defenses."

The plaintiff duly excepted to such findings and conclusions of the court, and the questions we shall discuss are clearly within the terms of such exceptions, and the additional assignments involving the correctness of the judgment.

The evidence clearly shows that Green and Waggoner entered into an agreement with the directors of the oil company by which and under the terms of which they agreed with such directors to accept a conveyance of all the property of the company and in return agreed that they would assume and pay all the debts of the company. This agreement was made by a board of five directors, two of whom were Green and Waggoner. Waggoner was also president of the company. In pursuance of this agreement the board had entered in the company's minutes an order for the vice president to execute the conveyance to Green and Waggoner, upon the recited consideration of the assumption of the debts of the oil company. Before the deed was executed by Morgan, the vice president, and possibly on the next morning after the directors' meeting, Waggoner went into his office and told him to make out the deed to Clois L. Green. Morgan's testimony is that Waggoner said to him, "When you go to draw that transfer make out the papers to Clois," but said nothing to him to indicate his repudiation of the contract of assumption of the debt, and there is no evidence that he (Waggoner) ever notified any other of the directors that they would look to Green alone to carry out the contract of assumption prior to the execution and delivery of the deed, except Waggoner's own testimony. It will be understood that the company owed Green about $140,000 and owed Waggoner $90,000, and that the total indebtedness amounted to approximately $300,000, Green, on direct examination, testified that he first made a proposition individually to take over the property and assume the debt, but practically admits the facts to be as stated by Morgan and as shown in the minutes of the directors. Waggoner denies that he ever made any proposition to take over the assets of the company and to assume any of its debts, nor did he authorize any one to do so for him. Waggoner testifies that he went to Morgan's office and as to this contract—

"to which you refer, my going over there and making it out, the transfer between Mr. Green and myself, I didn't have anything to do with. I knew he was going to transfer it to Green and Waggoner, and I told him I didn't want it transferred to me. I told him (Morgan) when he brought up that transfer to have it made out to Mr. Green, I would not have anything to do with it."

At another time, prior to this last quotation, Waggoner testified:

"Mr. Green made the proposition at that meeting that he would take over the company, assume the responsibility, and pay all the debts. It is a fact that he said to the board of directors, 'I will take over the proposition and pay all of its debts.' As to Mr. Ferguson saying, 'No; Mr. Green and Mr. Waggoner take them over together and assume the debts and then we will turn them over to you,' I don't remember what Mr. Ferguson said at the meeting. Mr. Green might have mentioned my name, he and me together, but I didn't say I would. I told Mr. Tennyson right after the meeting I would not do that and also went to Mr. Morgan's office. I told every one, I know. I told Mr. Ferguson there that evening or several days later. I went to Mr. Morgan's office that evening but he was not in, and I didn't see him possibly for several days, not when I went over there to make out this contract."

It appears from the evidence of Green that he transferred all of the personal property of the oil company to Waggoner upon Waggoner's agreement that he would pay off a note for $60,000 owing by the oil company to Wichita State Bank, upon which Green and Waggoner were indorsers. Waggoner paid this note and received all of said personal property.

[1] As to the defendants' objection to the introduction of the note by the oil company, on the ground that it was not properly executed, being executed after the dissolution of the company, it appears that Green was vice president and director of the company at the time of its dissolution. After the dissolution of the company the directors became trustees for such dissolved corporation, and, in the absence of a plea of non est factum, it will be presumed that Green had the authority as such director, to sign a renewal note.

[2] The case of Waggoner v. Magnolia Petroleum Co. (Tex. Civ. App.) 252 S. W. 865, is not applicable to the facts of this case. Hence the issues involved herein are not stare decisis. In that case the defendants were sued as successors of the Burk-Waggoner Oil Company, and consequently the deed from the company to Green was the basis of the claim of succession and of a portion of their cause of action. In this case the suit is upon the assumption of the indebtedness by Waggoner direct. Again, in the Waggoner v. Petroleum Co. case it was not disclosed that Waggoner had ever taken possession of the property or had in any way been benefited. In this case the evidence discloses that Waggoner received from Green all of the personal property of the corporation and that in consideration therefor he paid the oil company's note to the Wichita State Bank in the sum of $60,000, on which note he was liable as indorser, thus constituting himself a preferred creditor to the injury of the other creditors. It is true that the plaintiff did not expressly allege that Waggoner was guilty of fraud in having the deed changed so as to convey the title to Green alone, but the facts alleged, if Waggoner did as charged, which to our minds conclusively appears from the record, show he was guilty of legal fraud.

[3] In the case of Hickernell v. Gregory, 224 S. W. 694, this court, speaking through Chief Justice Hall, says:

"The rule is that, though fraud is neither alleged eo nomine nor set out by the pleader as a legal conclusion from the facts stated, yet, when the pleading sets up facts which, if true, amount to fraud, it is sufficient even without alleging a fraudulent intent. Mussiana v. Goldthwaite, 34 Tex. 126, 7 Am. Rep. 281; Ames Portable Silo & Lumber Co. v. Gill, 190 S. W. 1130, and authorities cited."

This being true and the necessary facts having been pleaded, we shall consider the question of Waggoner's conduct in having the deed made to Green as though fraud had been specially alleged eo nomine.

Waggoner knew that the deed from the oil company was to be executed to him and Green. He knew from the discussion of the matter at the board of directors meeting that they had declined to accept Green's offer that he would take over the property and assume the debts individually, and that it was only accepted when he (Waggoner) was made a party to it. He knew that the deed was to be drawn up and delivered to Green and himself jointly, for he says he did. This being true, he knew when he went to see Morgan, the vice president, and ordered him to make the deed to Clois L. Green, that the deed as so drawn did not contain, and was not intended to contain, the whole contract, for he knew that the contract entered into expressly provided that he should be one of the grantees liable for the consideration named and by his legal fraud, having deliberately ordered the leaving out of one of the constituents, he was bound to have known that it was not a complete merger with all terms contained in it—that is, the deed.

[4] The plaintiff again, not relying upon the deed upon which to base its cause of action, but expressly relying upon the assumption of indebtedness, and the evidence showing that Waggoner had largely benefited by the taking over of the company's personal property, the rule applies that a stranger to the instrument, not having assented to the contract, is not bound by it, and is therefore at liberty to show that the written instrument does not express or contain the whole of the agreement. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; Hughes v. Sandal, 25 Tex. 162; Vander Stucken v. Willoughby (Tex. Civ. App.) 242 S. W. 478; Godwin v. Banister (Tex. Civ. App.) 242 S. W. 1098, consequently the statutes of fraud have no application to the question before us. See, also, Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764.

For the reasons stated, we reverse the judgment of the trial court, and here render judgment for the appellant, plaintiff below.