**FARMERS ELEVATOR CO. et al. v. WUNSCHEL et al.**

No. 13225.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 27, 1935.

Rehearing Denied Nov. 1, 1935.

See, also, Farmers' Union Elevator Co. v. Wunchell (Tex.Civ.App.) 79 S.W.(2d) 928.

E. L. Fulton, of Wichita Falls, John Murphree, of Iowa Park, and P. B. Cox, of Wichita Falls, for plaintiffs in error.

W. W. Shuler and Smoot & Smoot, all of Witchita Falls, for defendants, in error.

DUNKLIN, Chief Justice.

By writ of error proceeding, John Hirschi, W. F. George, and J. F. Boyd seek reversal of a judgment rendered against them in favor of Max Wunschel for $1,-368.29, wages for personal services rendered by him and C. A. Brown; the latter having assigned to plaintiff his claim for such wages.

The trial was before the court without a jury, and findings of fact and conclusions of law of the trial judge appear in the record here.

The material facts involved were as follows:

The Farmers Union Elevator Company was duly incorporated under the laws of this state on May 19, 1905. After its incorporation, by vote of the stockholders, the word "Union" was dropped from its corporate name, and thereafter it was operated under the corporate name of Farmers Elevator Company. It was incorporated for a period of twenty years, which expired May 19, 1925. At the date of its expiration, John Hirschi, E. C. Knox, W. F. George, and J. F. Boyd were its directors. E. C. Knox was the general manager of the business of the corporation and had held that position for about eleven years prior to the expiration of the charter.

The directors undertook to wind up the business of the defunct corporation, and on February 28, 1930, E. C. Knox, who had been in charge as general manager of the business up to that time, entered into a contract stipulating that he would take over all the assets of the defunct corporation and assume payment of all of its unpaid debts, and as security for the performance of his contract he would pledge all of those assets and transfer a promissory note in his favor for $12,500, secured by a mortgage lien on certain lands in Denton county. The following are items of indebtedness owing by the corporation which he assumed:

"First National Bank, Iowa Park, Texas, $13,500.00.

"W. F. George, $24,000.00.

"Mrs. John Serrien, $7,500.00.

"John Hirschi, $12,000.00.

"Various other smaller accounts and debts $1,000.00 or more."

Knox further agreed that he would engage in the grain, feed, and elevator business in Iowa Park under the trade-name of "Knox Grain Company" and pledged all his assets in that name as further security for the payment of the debts of the defunct corporation.

That contract further stipulated that John Hirschi, W. F. George, and Tom Corridon, as trustees, should have general supervision, management, and control of the operations of the said E. C. Knox under said trade-name of Knox Grain Company in all of its phases, with full authority and power to supervise and direct E. C. Knox in the operation and management of the business, and Knox agreed to work under and with the trustees and devote his entire time to the business, to the end that revenues might be realized therefrom sufficient to retire the indebtedness of the defunct corporation which Knox assumed.

That contract was signed by E. C. Knox, John Hirschi, and the First National Bank of Iowa Park, by J. F. Boyd as its agent. Although it was not executed by the full board of directors of the defunct corporation, yet Knox took over the assets and proceeded to conduct the business as though he were the owner, all in accordance with the terms of his contract without objection on the part of any of the directors who did not execute the contract.

Max Wunschel and C. A. Brown had worked for the defunct corporation before its dissolution, under employment of Knox as its general manager, and continued to

perform like services after the execution of the above-mentioned contract, with the implied knowledge and consent of all the directors of the defunct corporation. According to their testimony, they did not know of any change in the legal status of the business, although after Knox began the operation of the business under the trade-name of "E. C. Knox Grain Company" they accepted checks in payment of their services drawn in that name. The findings of the trial court included a full copy of that contract and the taking charge of the assets of the corporation and conduct of the business by Knox; also the following:

"E. C. Knox had been in general charge of the business for a number of years as general manager of the business of the corporation and after February, 1930, he continued in charge under the title of Knox Grain Company.

"No effort was made to dissolve the corporation or to settle up its business other than that detailed above except that a notice was put in the paper that Hirschi, Boyd, and George would not be responsible for the debts of Knox Grain Company which was never brought to the knowledge of either plaintiff or Brown.

"No material change was made in the conduct of the business after February, 1930, except that the name was changed to Knox Grain Company; and all the earnings and proceeds of the company were handled and controlled by Knox.

"I find that the defendants in making said contract with Knox acted in good faith hoping and trusting that Knox would be able to pay off their indebtedness but it resulted in failure and the bank took over the property. * * *

"That the indebtedness mentioned in said purported contract was not shown to be the liability of the defunct corporation at the time of its dissolution but was indebtedness incurred largely after the said dissolution by said trustees.

"The said corporation at the time of such dissolution was the owner of and in possession of real estate, personal property accounts and bills receivable of the value of not less than $20,000 and was permitted to be sold under a purported deed of trust securing an alleged indebtedness of $14,-500.00 evidenced by a note dated September 4, 1927, and due in six months thereafter with 10% interest per annum, on the 7th day of February, A. D. 1933; that said note was payable to the First National Bank of Iowa Park, Texas, and no part of the proceeds of such sale was paid upon any other indebtedness or to any of the other creditors mentioned in said purported contract of February 28, 1930.

"That said note and deed of trust was signed by E. C. Knox, vice president Farmers Elevator Company.

"That all the proceeds and profits arising from the conduct and operation of such business under said Knox Grain Company was turned over to the trustees named in said purported contract to be applied pro rata among said mentioned creditors regardless of the fact whether they were creditors of such defunct corporation or said trustees; that some profits were made and no part thereof was used to pay for the services of said plaintiff and C. A. Brown in whole or in part."

This suit was to recover for services rendered by Wunschel and Brown during the years 1931 and 1932, which was subsequent to the taking over of the assets by Knox under his contract and was based upon a claim of partnership liability of all the directors for those services, asserted in five separate counts in the petition; but the only count upon which a recovery was allowed is shown in the following conclusions of law by the trial judge:

"I conclude as a matter of law and as a result of the foregoing facts:

"1. That upon the Farmers Union Elevator Company (or Farmers Elevator Company) becoming defunct by reason of the expiration of its charter May 19, 1925, the directors E. C. Knox, J. F. Boyd, John Hirschi, W. F. George, and J. B. Ferguson, deceased, became at once trustees charged with the duty of winding up its affairs; and upon failure to do so with reasonable promptness, they became charged as partners with the debts of the business contracted in connection with the continued conduct of the business, under the express provision of article 7091, Rev.St. 1925.

"2. That the affairs of the corporation not having been wound up or the corporation formally dissolved and an accounting made with the stockholders at the time the debt sued on was contracted in connection with the business of the defunct corporation, the liability of the defendants as directors of such corporation was measured by the rules applicable to a partnership.

"3. That the status of the defendants as partners would not be affected by the writ-

ing of February 28, 1930, because, first, the contract was never actually completed either by the execution by all of the parties or by a conveyance of the assets of the company to Knox, and, second, the contract under a fair interpretation was not a conveyance to Knox, but was merely an arrangement to borrow his name to continue the contract of the business wholly for the benefit of the directors who were interested in reducing their liability as partners for the large indebtedness and who arranged under such contract, if it was a completed contract, to use all the resources, assets, earnings and profits, to that end, and the labor of the plaintiff and Brown rebounded not to Knox individually, but to all the defendants in their efforts to reduce their said liability.

"4. That the defendants being liable as partners, a judgment against all for the debt sued on is proper."

Several other parties were made defendants and others intervened, and appellants addressed numerous exceptions presenting the contentions of misjoinder of parties and causes of action, all of which were overruled. We are inclined to hold that some of those exceptions should have been sustained, but the error, if any, in those rulings would not require a reversal of the judgment against appellants, since all the parties so joined and the claims asserted by them were dismissed in the judgment rendered, and no complaint is made here of that action.

Article 7091, Rev.Civ.Statutes, upon which the court based his conclusions of partnership liability of appellants, has no proper application in this case. Its provisions relate to fixing partnership liability upon the directors of a corporation who undertake to carry on the business of a corporation after its right to do business has been forfeited for failure to pay any franchise tax. And by article 7092 the right to do business, which has been forfeited for failure to pay a franchise tax, may be revived upon compliance with the conditions there prescribed. The charter of the Farmers Elevator Company was not forfeited for nonpayment of a franchise tax, but by its own terms it expired at the termination of the period for which it was granted. Thereafter the duties of its directors were fixed by article 1388, Rev.Statutes, reading as follows: "Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

It is manifest that partnership liability of the directors could not arise from the handling of the assets of the defunct corporation in accordance with the powers and duties prescribed in that article of the Statutes. And there was neither pleading nor proof of just when the directors of the defunct corporation ceased to deal with its assets as trustees under the provisions of article 1388, which would be necessary, in any event, to a recovery by plaintiff, on the theory of partnership liability under the common law, independently of that statute, if they did follow that course.

Furthermore, there was neither pleading nor evidence nor a finding by the trial court that the directors converted or wrongfully dissipated any of the assets of the corporation which came into their hands, nor what, if any, of those assets were turned over to Knox at the time he took over the business. The contract with Knox expressly stipulates that the directors who signed it did so as trustees only; and there was no evidence to show any different understanding by the directors who did not sign it, or that independently of that contract they authorized or participated in the conduct of the business by Knox after he executed that contract.

Accordingly, the judgment of the trial court against appellants is reversed, and the cause is remanded as to them; but since no complaint is made here by any of the other parties to the suit—including the defend-

ant E. C. Knox—of the judgments against them, those judgments are left undisturbed.

All costs of appeal are taxed against appellee Max Wunschel.

MARTIN, J., not sitting.

### On Motion for Rehearing.

DUNKLIN, Chief Justice.

Under different assignments of error in appellees' motion for rehearing, the statement is made that the written contract signed by E. C. Knox, John Hirschi, and the First National Bank of Iowa Park, which is copied in full in the trial judge's findings, was never introduced in evidence, and further that the same could not be given effect in this case, since Hirschi and Knox did not sign the same as directors or trustees of the defunct corporation and it was not executed at all by W. F. George and J. F. Boyd, the other directors. The record shows that at one stage of the trial one of plaintiffs' counsel offered the contract in evidence, but upon the suggestion of his co-counsel he refrained from introducing it at that time. But the statement of facts further shows that later the contract was introduced by one of plaintiffs' counsel and was copied in full by the court stenographer in the statement of facts, which statement of facts was agreed to by counsel for all parties and was approved by the trial judge.

■ While that contract was not executed by a majority of the board of directors, and therefore did not show on its face to be the contract of the board as a whole, and while it is further true, as found by the trial court, that the board did not execute a formal transfer of all the assets on hand to E. C. Knox as contemplated by the contract, yet the evidence further shows without contradiction that Knox, acting under that contract, actually took over all the assets and proceeded to operate the business for a period of approximately two years, all without objection from any of the directors until a complaint was later made by the trustees of mismanagement, but the services for which plaintiffs sued were rendered prior to such complaint. Furthermore, as found by the trial judge, Hirschi, in connection with other directors and creditors, caused the contract to be drawn and signed by the persons who did sign it. Further still, the execution of the contract was incidental to winding up the affairs of the defunct corporation and was within the

implied authority of the board of directors without the necessity of any formal written order to that effect. Hart v. First State Bank (Tex.Civ.App.) 24 S.W.(2d) 480, writ refused; Oil Well Supply Company v. Burk-Waggoner Oil Co. (Tex.Civ.App.) 261 S.W. 830, 831; United States v. Kemp (C.C.A.) 12 F.(2d) 7, certiorari denied 273 U.S. 703, 47 S.Ct. 97, 71 Law Ed. 848.

■ Plaintiffs were not creditors of the defunct corporation, since the services for which they sued were rendered long after its charter had expired and, therefore, they could not claim any benefits of the provisions of article 1388, Rev.Civ.Statutes, and this is a complete answer to most of the complaints and arguments presented in the motion for rehearing.

■ In further support of the conclusion expressed on original hearing, that article 7091, Rev.Civ.Statutes, which was made the basis of the conclusion reached by the trial judge of partnership liability of all of the directors, has no application to this suit, we deem it proper to add the following observations: The provision of that statute fixing partnership liability of the directors under circumstances therein specified is an abrogation of the common law which would otherwise be applicable in such a situation, highly penal in its nature, and therefore must be strictly construed. And one invoking its benefits must bring his case within its provisions. 11 Tex.Jur. § 469, p. 132, and § 470, p. 135. That article does not purport to apply except where a corporation has forfeited its charter for failure to pay a franchise tax, and which forfeiture may be avoided under the provisions of article 7092, Rev.Civ.Statutes. We believe it manifest that it would have no application where the corporation has become defunct by the expiration of the term for which its charter was granted, and in which case the duties and obligations of the directors are as prescribed by article 1388, R.C. S., and that article relates to the handling of assets of the dissolved corporation for protection of its stockholders and creditors only.

The announcement made in the opinion of the Commission of Appeals in Burkburnett Refining Co. v. Ilseng, 116 Tex. 366, 292 S.W. 179, 181, "that the assets of a dissolved corporation will be protected in equity as a trust fund for creditors and stockholders," and other authorities cited in the motion for rehearing, to the effect that the directors will be liable for the mis-

appropriation of such funds, are not applicable in this case, in the absence of a showing that plaintiffs were creditors of the defunct corporation and that assets belonging to the corporation on which plaintiffs had a claim as creditors of the corporation had been dissipated.

Knox, who was introduced as a witness for plaintiffs, testified without contradiction that he told plaintiff and Brown that he was taking over the business personally and, in answer to questions by plaintiffs' counsel:

"Q. Did you explain the exact terms? A. Well, to the best of my recollection, I told them how it was going to be handled.

"Q. Did you tell them the property had been turned over to you? A. I told them that I had made a contract and was taking the business over and if I pulled it through it would belong to me and if I did not, I did not know what would happen."

Upon cross-examination plaintiffs admitted, in substance, that they knew that Knox had taken over the business notwithstanding testimony on direct examination that the business continued to be run in the same manner as before. Counsel also call attention to the testimony of plaintiff Wunschel that in some instances Knox paid them for their services in cash, which he authorized them to take out of the cash drawer. Hence the recitals in our former opinion on this point will be modified to that extent. But the same can be given no controlling effect in the determination of this motion.

Appellees insist further that our former judgment should be vacated and the appeal dismissed for want of jurisdiction for two reasons: First, because interveners, Mrs. E. C. Knox and Mrs. I. N. Harrison, who were denied recovery, and the State National Bank of Iowa Park, the State National Company, and J. N. George, who were dismissed by the trial court, were not served with citation on plaintiffs' petition for writ of error. Second, for lack of service of citation on Max Wunschel of the petition for writ of error. A motion to dismiss on the first ground has heretofore been overruled on January 11, 1935, in a written opinion [79 S.W.(2d) 928] by Associate Justice Lattimore, and we adhere to the conclusions so reached.

As to the second ground, the record shows that Max Wunschel instituted this suit in his own name and appeared and testified in his own behalf while sane. The date of trial was May 22, 1934. On July 2, 1934, the court entered an order finding Wunschel to be of unsound mind and appointed Mr. W. W. Shuler, who had been his attorney of record in the case, guardian ad litem during the further prosecution of the suit and with all the power and authority necessary in the premises. Following that appointment, Mr. Shuler, in connection with associate counsel, has filed briefs here and appeared on oral argument when the case was submitted.

We conclude that the motion to dismiss is without merit. 3 Tex.Jur. p. 387, § 275; 4 Tex.Jur. p. 654; 32 C.J. p. 775, § 599.

And appellees' motion for rehearing is in all things overruled.

MARTIN, J., not sitting.