Willie, Chief Justice.
The appellee, Alice Bullís, joined by her husband, John Bullis, sued the appellants for partition of section eight, block eight, in Presidio county, she claiming an undivided one-fourth interest in said section of land, and alleging that the remainder belonged to the Presidio Mining company. She alleged that on the eighth of June, 1882, William Shafter, "Louis Wilhelmi, John A. Spencer and herself, then owners of said section, made a contract with one Daniel Cook, substantially as follows: The owners of the land bonded and leased it and another section, known as section six, block eight, to Cook for one year for the purpose of developing the mineral resources of these lands, he to incur all the costs of the experiment. At the end of the year, or sooner if demanded by Cook, *587 they were to make a deed to him. for the land, on condition that he formed two separate mining companies embracing each of the above sections, each company to have a capital stock of not less than one hundred thousand dollars, and give to said owners the one-fifth of said stock, free of all assessments till all the necessary machinery was erected and paid for, and the mine placed upon a paying basis. He was also to pay the owner ten dollars per acre in addition for the land. Should Cook conclude, after having thoroughly prospected the property, not to complete the purchase, he was to surrender possession to the said owners, with all the improvements placed on the same, free of expense to them.
She further alleged that the terms of this instrument had not been complied with on the part of Cook, or the appellants who had succeeded to his rights under it, within a year from its date, but that the latter held possession of the land against the plaintiffs. She alleged that the tract contained valuable minerals, and that the appellants had obtained large quantities of ore and are still working mines upon the land for their own benefit. She prayed for a partition, and an account, etc., and an injunction to stay further taking of ore from the property. A temporary injunction was granted.
The appellants denied all these, allegations; they set up that the interest claimed by plaintiff was not her separate property, but the community property of herself and husband, and averred that they had fully complied with all the conditions of said instrument except such as had been expressly waived by the plaintiffs. They further claimed that the time in which the contract was to be performed on their part had been, in effect, extended by the plaintiffs, and the appellants had made the tender of the money and stock agreed to be given to the plaintiffs, within the time to which performance had been extended. A trial was had before the court and jury, and a verdict returned for the plaintiffs. Judgment was rendered directing a sale of the land for the purpose of a partition; the injunction was perpetuated, and the plaintiffs required to pay one-fourth the costs of partition up to the first term of the court, and the defendants to pay all other costs. From this judgment the defendants appealed to this court.
The first issue before the jury was as to whether the one-fourth interest claimed by Mrs. Bullís was her separate property, or the community estate of herself and husband. If it was her *588 separate property at the time the contract with Cook was made this contract could not be enforced against her; for it seems from the record that she had never acknowledged it in the manner prescribed by our statutes for the execution of contracts by toanried women. And if properly executed she certainly would not be bound by any agreement that the husband might make for its execution, for this would be to obligate her to the performance of a different contract from that to which she had consented. Hence the issue as to the status of the land sued for, so far as title was concerned, involved a question of the utmost importance.
The evidence relied on to show that the land was the separate property of Mrs. Bullís may be briefly stated as follows: The appellee, John Bullís,. William Shafter, and Louis Wilhelmiagreed among themselves to purchase several sections of land in the Ohenati mountains supposed to contain mineral ore. These were school lands, and the parties, in pursuance of their agreement, applied for nine sections, as follows: Shafter applied for two in his own name and two in the name of his wife;. Wilhelmi applied for three, and Bullís applied for two in the name of his wife. It was agreed that the three should be interested in the lands to be applied for and purchased, and the understanding then was that no one else was to be interested. The lands to be purchased were to be held in common by these three parties. Afterwards they agreed to take in one Spencer, on account of his being a known prospector of mines, and the other three were to pay Spencer’s pro rata of the cost of the land. The applications were filed in the surveyor’s office, November 5, 1880.
The effect of this testimony is to prove that the lands acquired were to be held in common by these four persons. Their object,, as shown by the evidence, was to engage in a mining adventure; and, to increase their chances of finding precious minerals, they proposed to acquire as large an area of land as possible. They could not acquire enough in their own names, and hence used the names of their wives to secure additional sections. Bullís applied for two sections in the name-tof his wife, one of which includes the land in controversy, and stated at the time that he made the application in her name, that he did so because he had already applied for three sections, and could acquire no more in his own name. He seems to have been the one who made the suggestion as to acquiring additional lands in the *589 names of the wives of the parties interested. Bullís testified that he intended section eight for his wife at the time of applying for it, but did not testify that he made any statement to that effect at the time. Other witnesses proved positively that he made no such declaration. In pursuance of the agreement, deeds afterward passed between Shatter, Wilhelmi, Spencer and Mrs. Bullís, which apparently put the title as the parties contemplated.
The land in dispute was therefore presumably bought with community funds, and the title taken in the name of the wife. This made it prima facie community estate, and the burden of showing to the contrary rested upon the plaintiff. If it was a fact that the husband did actually intend at the time of making the application that the land should belong to his wife, it doubtless became her property as to ’him and his heirs, and those claiming under him with notice. The intention of the husband, whether to give the land to his wife or that it shall become part of the community estate, is the subject matter of proof, like any other fact. Surrounding circumstances and contemporaneous statements of the husband may be taken into consideration, and must have more or less weight in determining his intention. It has been held by this court that a declaration of the husband made at the time the title is taken in the wife’s name, that he intends it for her separate benefit, will make it her separate property as to him and his heirs. (Higgins v. Johnson, 20 Texas, 389.)
It must be also true that if the declarations are such as show that it was intended to be community estate, it would assume that character. It results, that much force is given to declarations made at the time as evidence of the real intention of the husband, and they are entitled to great weight in corroborating or disproving, any evidence as to a secret intent, different from that which was contemporaneously expressed. So, too, as to other facts and circumstances occurring at the time, which tend to show the true intent of the husband in having the deed made to his wife. A declaration at the time, however, is not necessary to establish his intention, one way or the other, and it may be proved by accompanying circumstances.
There was no proof that Bullís stated at the time of making the application, that he was buying the land for his wife, though he testified that he intended it for her benefit. But his object in applying for the land in her name was plainly shown by his *590 own declarations and the circumstances attending the transaction. He had acquired all the land he could from the State in his own name; and, wishing to procure as much as possible to put into the mining partnership, he had to resort to this means of purchasing an additional quantity. His distinct understanding with his associates, however, was that he and they were to share equally in the ownership of all the lands acquired, no matter in whose names the titles were issued. The titles taken in the names of the parties to the agreement made the lands community property, and those taken in the names of their wives had presumably the same effect, and the fact that either of them had already obtained all he could from the State in his own name, would not, of itself, make those applied for in the name of his wife community property.
Titles acquired from the State are subject to the same rules, in this respect as those taken from individuals; and the fact that the title in this case was applied for in the name of Mrs. Bullís, because her husband had already acquired three sections in his own name, was not, without other evidence, sufficient to divest it of its community character. Upon this state of facts the court charged the jury upon the.question of separate property as follows:
“If you are satisfied, by a preponderance of proof, that on the twelfth day of October, 1881, John L. Bullís signed the name of Alice Bullís to the application of Alice Bullís to purchase the land in controversy from the State of Texas, and declared at the time that he wished to purchase the said land from the State of Texas for his wife, said Alice Bullís, to be her separate property, and that after that time the said Alice Bullís, with the consent of said John L. Bullís, executed and delivered a note for the balance of the purchase money for said land, after making the first paymeent on said land; that it was the intent of said John L. Bullís, at the time of making said application, that said land was to be the separate property of said Alice Bullís, and that it was the intent of said Alice Bullís and John L. Bullís, at the time of executing and delivering said note to the State of Texas for the unpaid balance of the purchase money for said land, that the land was to be the separate property of the said Alice Bullís, and that said John L. Bullís had at said time of signing the application for said land, already purchased three sections of school land from the State of Texas, which was all the law permitted him to purchase for *591 himself, and that said land in controversy was at said time a section of school land, and that said land was paid for by said John L. Bullís, and that the patent for said land was issued to said Alice Bullís, then said property would be the separate property of the said Alice Bullís.”
Whether this charge was abstract law or not, it did not properly present the issue as made by the evidence. In the first place there was no evidence tending to show that Bullís declared at the time of making the application that he wished to purchase the land for his wife, and make it her separate property. The charge tended to mislead the jury and make them believe not only that such a statement of Bullís was an important fact in the case, but that the court supposed there was evidence upon which they were authorized to find that it had been made. It doubtless led them to think that Bullis’s declaration as to the reason why he applied for the land in the name of his wife, was equivalent to a statement that he intended it as her separate property. This, more especially as the court laid before them the hypothesis as to whether or not Bullís had acquired all the land he was entitled to, a matter about which there was no proof further than was contained in his declaration made at the time of the application.
The charge made the question of separate property or not depend upon whether there was an intention to give the property to Mrs. Bullís, coupled with a declaration to that effect, when the question was: Did the facts and circumstances surrounding the application and purchase provb or disprove the alleged secret intent of Bullís to give the land to his wife? All question as to his declaration of an intent to make it her separate property should have been left out, and the jury should have been left free to consider the facts really in evidence tending to show the intention of Bullís at the time of making the application. In the charge as given, the intent of Bullís as testified to by him was to be tested solely by a fact not in evidence before the jury. When the court came to lay before the jury the hypothesis upon which they were to find that the property was not the separate estate of Mrs. Bullís, this is made to depend alone upon the absence of the supposed declaration. If this hypothesis was correct, it is clear from what we have said that the verdict in this issue should have been for the defendant; and if the jury concluded that it was the separate estate of Mrs. Bullís they were evidently misled by the charge into believing that the supposed *592 declaration had actually been made. It would have been better too that the court should not have made the finding of the jury to depend at all upon the question as to whether Mr. or Mrs.* Bullís paid for the land, for the payment in either case was presumably made from community funds.
We think the charge was misleading in the matters to which we have alluded, and for this reason the judgment must be reversed.
As the cause will have to be remanded for a new trial, it may be proper to give some directions to be observed in case the jury should, upon another trial, find the land in dispute to be the community property of Bullís and wife. The rights of the parties will depend upon two questsons: 1, whether time was of the essence of the contract of June 8, 1882; 2, if so, had the time within which it was to be performed been waived or extended by the parties?
We think that, upon the face of the contract, it was essential that Cook should perform his obligations by the end of one year from its date. He was placed in the possession of the land for the purpose of developing its mining resources. In order to do this, he was bound to injure it more or less for other purposes, and the longer he worked the more injury would result. It was, therefore, to the interest of the owners that he should complete his investigations by the time stated or sooner. Whilst he was in possession they received no compensation for the use of the premises. The value of the land was liable to fluctuate; and the same may be said of the stock he was to give in return for it. The pay they were to receive from him was not to increase with the increased length of time he should occupy the land; moreover, the contract was unilateral. It was left entirely at the option of Cook whether he would take the land at the end of the year or not; and, in such cases, it is the general rule, to which this case is no exception, that time is of the essence of the contract. (Pomeroy on Specific Performance, secs, 884, 385, 387; Edwards v. Atkinson, 14 Texas, 373.) It was, however, within the power of the owners to waiver its performance within the period specified. All of them, except Bullís, signed a paper in which they agreed to its extension. The law governing the alleged waive, as to him, was correctly charged by the judge below, and need not be discussed.
As to the matter of costs, we think that, should the judgment be rendered in favor of the plaintiffs upon another trial, they *593 should recover all the costs incurred by them in establishing their right to the land, and those subsequently incurred in partitioning it, or selling it for partition, should be so divided as to require the plaintiffs to pay one-fourth, and the defendants the other three-fourths. Should the judgment be rendered in favor of the defendants they will, of course, recover all the costs of the suit.
Opinion delivered June 25, 1887.
For the errors pointed out, the judgment will be reversed and the cause remanded for further procceedings, in accordance with this opinion.

Reversed and remanded.