Peggy Viola **KITCHENS** et al., Appellants,

v.

Clay **KITCHENS**, as Independent Executor of the Estate of Inez Kitchens, Deceased, et al., Appellees.

No. 4172.

Court of Civil Appeals of Texas.

Waco.

Oct. 24, 1963.

Rehearing Denied Nov. 14, 1963.

Stovall & Gibbs, San Angelo, M. C. Blackburn, Junction, for appellants.

O'Neal Dendy, San Angelo, R. E. Lee, Mason, for appellees.

WILSON, Justice.

This cause involves three separate appeals, or segments, which will be considered separately. Peggy Viola Kitchens and Lynette Wallace sued Clay Kitchens, individually and as independent executor of the estate of his deceased mother, Inez Kitchens. Patricia Anne Bunyard was also sued. Peggy Viola Kitchens is the widow of Ray Kitchens, son of Inez. Clay Kitchens is the son of Inez, and Lynette Wallace is her daughter. Mrs. Bunyard is the daughter of plaintiff Peggy Viola Kitchens, and the granddaughter of Inez Kitchens. Plaintiffs sought partition of an 1126 acre ranch in Menard County, an accounting with settlement of interests in personalty alleged to have been derived from operation of a partnership, and a declaration that

provisions in the will of Inez Kitchens were ineffective. Peggy Viola Kitchens sought judgment against Mrs. Bunyard for an interest in bonds.

After a jury trial, the judgment (1) declared the provisions of the will to be void; (2) determined the land sought to be partitioned was the separate property of Inez Kitchens (rather than the community property of herself and her husband John P. Kitchens), thereby denying Peggy Viola Kitchens any participation in partition of the Menard County ranch properties; (3) found the land was owned by plaintiff Lynette Wallace and defendants Clay Kitchens and Patricia Anne Bunyard, and ordered it partitioned; (4) determined a partnership existed between Inez Kitchens and her three children, Clay, Ray and Lynette, which was dissolved by the death of Ray; and rendered a judgment for accounting based thereon; (5) rendered judgment in favor of Peggy Viola Kitchens against Mrs. Bunyard for an interest in certain bonds alleged to have resulted or to have been derived from the partnership, impressing a lien on Mrs. Bunyard's interest in the land to enforce its payment.

Peggy Viola Kitchens appeals from the judgment denying her an interest in the land sought to be partitioned, resulting from the determination the property was the separate estate of Inez Kitchens. The executor and Mrs. Bunyard appeal from other portions of the judgment. Mrs. Bunyard appeals from the money judgment against her. The executor and Mrs. Bunyard appeal from the determination relating to invalidity of the provisions of the will. The executor appeals from decision as to certain personalty. Mrs. Wallace does not appeal.

We reverse the portions of the judgment summarized in (2) and (3) above, and affirm the remaining portions.

1. The Will

The first question to be determined is the construction and effect of the following

provisions, clause III, of the will of Inez Kitchens:

"It is my will and desire that the 1126 acre ranch situated in Menard County, Texas, and my undivided one-half interest in 482 acres of land in Gaines County, Texas be held intact for a period of ten years from the date of my death, and after the payment of all expenses, indebtedness, including taxes, then said property shall be sold and the proceeds thereof divided equally between Clay Kitchens, Lynette Wallace and Patricia Anne Bunyard. It is my will and desire that the above named heirs, or any one of them, shall have the right to purchase the above described ranch lands, provided that they pay as much or more than a disinterested individual would offer for same. It is stipulated, however, that should said Clay Kitchens, Lynette Wallace and Patricia Anne Bunyard decide to sell said property before the expiration of ten years, that they shall have the right to do so, provided all three shall agree, in which event said property may be sold by the Executor hereinafter named, and the signature of the above three persons will be all that is necessary for such sale."

The preceding clause II devised the fee simple estate in all the property of testatrix to Clay Kitchens, Lynette Wallace and Patricia Anne Bunyard. Clauses V and VI appointed Clay Kitchens independent executor, naming an alternate, with power of making sale, as executor, of her ranch lands "at the expiration of the above mentioned ten year period without the joinder of any other person."

■■ We are mindful of the rule that a construction will be given which will render a testamentary provision, open to more than one interpretation, valid rather than void. Mattern v. Herzog, Tex., 367 S.W.2d 312. Only one construction can be logically applied to clause III, however. It provides, in effect, that the ranch sought

to be partitioned shall be "held intact" for ten years except by unanimous agreement of the three named devisees to an earlier sale.

■ This restraint against alienation is repugnant to the grant of the fee simple estate, and is ineffectual, as a disabling restraint. Seay v. Cockrell, 102 Tex. 280, 115 S.W. 1160, 1163; Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149, 151; Restatement, Property, Secs. 404, 405; and see Mattern v. Herzog, Tex., 367 S.W.2d 312, 319.

■ Defendants Patricia Anne Bunyard and the executor urge that the quoted language constitutes only a partial restraint limited to ten years, and is therefore valid. We have discovered only one decision in which it has been held that a ten-year restriction was a valid partial restraint on alienation: Peters v. Northwestern Mut. Life Ins. Co., 119 Neb. 161, 227 N.W. 917, 67 A.L.R. 1311. It was expressly overruled, Andrews v. Hall, 156 Neb. 817, 58 N.W. 2d 201, 42 A.L.R.2d 1239. Texas cases which have expressed a view on the question have declined to adopt the exception concerning a fixed number of years. Pritchett v. Badgett, Tex.Civ.App., 257 S.W.2d 776, 777, writ ref.; O'Connor v. Thetford, Tex.Civ.App., (1915) 174 S.W. 680, 681, writ ref. The great majority of jurisdictions considering the validity of restraints for a fixed period of years have rejected defendants' contention. 42 A.L.R.2d 1290; 41 Am.Jur. Sec. 76, p. 115; VI American Law of Property (1952) Sec. 26.16, p. 431; 5 Tiffany, Real Property (3rd ed.) Sec. 1346. Restraints requiring consent or joinder of other persons designated are, except in three jurisdictions, uniformly held void. 42 A.L.R.2d 1302.

Defendants also say that under Lozano v. Guerra, Tex.Civ.App., 140 S.W.2d 587, no writ, the ten-year restriction only fixes a limit on the administration period. In that case the court did not pass on the present question. It held only that a provision the estate should be kept intact under

the control of the independent executor for five years did not preclude sale of a vested interest under execution. It was said, "If the devisee had voluntarily sold all his interest in the estate, the executors could not complain, and they are not entitled to restrain an enforced alienation".

The portion of the judgment declaring the provision in question to be an invalid restraint on alienation is affirmed.

## 2. The Partnership

Defendants Patricia Anne Bunyard and the executor present a series of points involving their challenge of existence of a partnership between Inez Kitchens and her three children. They say plaintiffs did not plead facts which would raise the issue; that the court erred in overruling their special exception on this ground; that there is no evidence of existence of a partnership or that any bonds or money affected by the judgment were purchased or derived from partnership funds. They state that the entire series of points "and every item involved can be fully and completely disposed of by this court's decision of whether or not" plaintiffs plead and proved such a partnership.

In Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S.W. 122, 125 the Supreme Court announced the established rule in Texas which "is a recognized test" of existence of the relation: "an agreed joinder of their interests in a common enterprise, its prosecution for their joint account, and an ensuing right in each of them to share in its net returns as such." In that case it was held there was a tacit agreement for "a community of interests, the common enterprise, its operation ·for the joint account, and a right in the owner of each interest to share as a principal in its profits as such"; and it was not necessary that the parties agree to become partners by name, "or that their agreement be an express one."

Plaintiffs alleged that commencing with the death of John P. Kitchens (hus-band of Inez, and father of the three children) in 1952, Inez and the three children by oral agreement "held together, operated and used all of the property" of the unpartitioned estates as a partnership business, "as though all the property, real and personal, belonging to said two estates was in fact the community property of John P. and Inez Kitchens, each of the children owning an undivided one-sixth share in said business, and their mother owning an undivided one-half share therein"; that Inez, with the help and co-operation of the three children, managed the properties; that by consent of the partners, "all receipts or income derived from the operation of the partnership business were allowed to remain in the partnership to be used and expended by Mrs. Inez Kitchens only to the extent that the operation and upkeep of all of said properties required, and to the extent of the needs of Inez Kitchens for her support and maintenance for the remainder of her life, and that the net receipts of any other assets derived from and through the operation of the partnership so remaining on hand at the death of Inez Kitchens, after the payment of all her debts, including expenses of last illness and burial, would belong one-half to the estate of Inez Kitchens and one-sixth to each of her three children"; and that the partnership was so operated.

Defendants' exception that the pleading was a conclusion is untenable under Rule 45(b), Texas Rules of Civil Procedure. The allegations as a whole gave fair notice, and in our opinion met each element of the test above prescribed by the Supreme Court.

There was evidence of probative force supporting these allegations and the findings of the jury that a partnership did exist after the death of the father, John P. Kitchens, until it was dissolved by the death of Ray Kitchens, one of the children. The parties invoked Art. 3716, Vernon's Ann.Tex.Stats. Partnership income tax returns were filed each year from 1952 through 1958, listing the interests of Inez and her three children as alleged, and re-

flecting profits and losses of the partnership which were accordingly reported on their individual income tax returns. Evidence not here complained of was admitted that an agreement was entered into after the death of John P. Kitchens to operate the ranch as a partnership; that although the income from the operation was not distributed to the children, "it was left with mother for her welfare", to maintain her and to operate the ranch, being placed in a "community fund" or bank account on which all drew checks. Losses were paid from the common fund. The mother's portion of the income tax was "divided three ways" and paid by the children. Although defendants point to contradictory evidence, it cannot be said there is no evidence establishing existence of the partnership until the death of Ray Kitchens in 1959. See Tanner v. Drake, 124 Tex. 395, 78 S.W.2d 162, 163; Blair v. Rindy, Tex.Civ.App., 358 S.W.2d 685, 688, writ ref. n. r. e.; Roberts v. Roberts, 113 Colo. 128, 155 P.2d 155; Barrett & Seago, Partnerships (1956) Sec. 2.2, p. 28; Lindley, Partnerships (1950) 11; 1 Rowley, Partnerships, (1960), Sec. 7.6. Point 5 relating to appointment of a commissioner, not being briefed, is waived. Other points of these appellants are overruled, and this portion of the judgment is affirmed.

### 3. Community or Separate Property Issue

Peggy Viola Kitchens (widow of Ray Kitchens, who was one of the three children of John P. and Inez Kitchens), appeals from that portion of the judgment determining the 1126 acre Menard County ranch sought to be partitioned was the separate property of Inez Kitchens, and denying appellant an interest therein. This appellant's position results from the fact that John P. Kitchens died intestate in 1952, leaving his widow Inez and the three children: Ray, Clay and Lynette, surviving. Ray (Peggy Viola Kitchens' husband), died in 1959, naming his widow sole beneficiary in his will. Inez Kitchens (Ray's mother),

died in 1960, devising her property to Clay, Lynette and her granddaughter, Patricia Anne Bunyard. The granddaughter, Patricia Anne, is the daughter of Ray and Peggy Viola Kitchens. Peggy Viola sought a decree partitioning the property, and setting aside to herself a one-sixth interest in the ranch, alleging it was community property of John P. and Inez Kitchens.

It was stipulated that in 1925 John P. Kitchens and Inez Kitchens "caused the title to the Menard County ranch to be placed in their son, Ray Kitchens, for their benefit, and for the purpose of placing such land beyond the reach of the creditors of John P. Kitchens," at which time there was "outstanding against John P. Kitchens a judgment for $865". The 1925 deed from third persons to Ray Kitchens conveying the Menard County ranch lands recited a cash consideration of $2499.25 paid by him, and the execution by him of 12 vendor's lien notes, each for $975. There is no other direct evidence as to the source of the cash payment, or the payment of any of the notes. Prior to that time, it was stipulated, John P. Kitchens and his wife had acquired title to land in another county, including one tract of "200 acres deeded to himself" and another of 280 acres to his wife, Inez. It appears John P. Kitchens inherited these tracts.

In 1933 Ray Kitchens executed a deed conveying the 1126 acre Menard County ranch to his mother, Inez, reciting a consideration of $10 cash paid by her, and her assumption of the payment of the last nine of Ray's vendor's lien notes, and other notes not clearly identified. No reference was made in the deed to the separate property, funds or estate of Inez Kitchens. Thereafter, Inez and John P. Kitchens executed a deed of trust describing the 1126 acres securing payment of their jointly executed note to the Federal Land Bank for $5600 in renewal and extension of the final eight of Ray's vendor's lien notes. This deed of trust was released in 1944, there being no recital or direct evidence as to source of payment. The judgment

against John P. Kitchens, referred to, was released in 1941.

The jury answered three issues, submitted over plaintiffs' objections, to the effect that John P. Kitchens knew of and consented to the insertion of the name of his wife Inez as grantee in the 1933 deed, and that he caused her to be named as grantee to prevent collection of the judgment against himself. No other issues were submitted or requested relating to this phase of the case.

◼◼ Having been acquired during the marriage of John P. and Inez Kitchens, "presumptively it was community property, even though" the deed to Inez "was drawn in her name, there being no language in the deed disclosing that the consideration was paid from her separate funds or that the property was conveyed to her as her separate estate." Magee v. Young, 145 Tex. 485, 198 S.W.2d 883, 884; Brick & Tile v. Parker, 143 Tex. 383, 186 S.W.2d 66, 67; Van v. Webb, 147 Tex. 299, 215 S.W.2d 151, 152; Art. 4619, Sec. 1, Vernon's Ann. Tex.Stats.

◼ Under Art. XVI, Section 15, Texas Constitution, Vernon's Ann.St., there being no evidence the property in question was purchased by Inez Kitchens with her separate funds, it could become her separate property only by gift in view of the record presented. Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565, 567.

◼ The record negatives a gift of the property to his mother by Ray Kitchens. The deed from him recites an onerous consideration: the assumption by her of the payment of the vendor's lien notes. "The one fact of recited onerous consideration, of itself, negatives the idea of a gift (prima facie, at least)," it was said in Kearse v. Kearse, Tex.Com.App., 276 S.W. 690, 693, because " 'Gift' and 'onerous consideration' are exact antitheses. The idea of their coexistence involves a paradox." Thereafter both John P. and Inez executed notes and a deed of trust in renewal and extension of notes constituting this same con-

sideration without reference to the separate funds of Inez, and there is no evidence as to the source from which they were ultimately paid. See Van v. Webb, 147 Tex. 299, 215 S.W.2d 151, 153; John Hancock Mut. Life Ins. Co. v. Bennett, 133 Tex. 450, 128 S.W.2d 791, 796, 797; Hodge v. Ellis, 157 Tex. 341, 277 S.W.2d 900, 905; Goodloe v. Williams, Tex.Civ.App., 302 S.W.2d 235, 238, writ ref.; Carter v. Grabeel, Tex.Civ. App., 341 S.W.2d 458, 460; Dillard v. Dillard, Tex.Civ.App., 341 S.W.2d 668, 671, writ ref. n. r. e.; Brown, Kronzer, 21 Tex. L.Rev. 39.

◼ There remains the question of the effect of the stipulation that husband and wife "caused the title to the Menard County land to be placed in their son," Ray Kitchens, "for their benefit" and to place the land beyond the reach of creditors; and the effect of the jury findings that John P. Kitchens caused his wife to be named grantee in the deed to prevent collection of the judgment. The effect of the stipulation is that the son held the record title for the benefit of the community. The fact that he so held it to prevent its subjection to satisfaction of a judgment against his father, or that he conveyed it to his mother for the same purpose, did not affect its validity as between the spouses and those claiming under them. DeGarca v. Galvan, 55 Tex. 53, 56; Evans Co. v. Guipel, Tex. Civ.App., 35 S.W. 940, 941; 26 Tex.Jur.2d 349. The stipulation is not a basis for the judgment that the ranch was the separate property of Inez.

◼ What, then, is the effect of the jury finding that John P. Kitchens "caused" his wife's name to be shown as grantee in the deed from the son? "Where the title is not limited to the sole separate use of the wife, the fact that the deed is taken in her name at the instance of or with the knowledge and consent of the husband, tends to show that he intended the title should vest separately in her and is sufficient to raise an issue on that question". Asberry v. Fields, Tex.Civ.App., 242 S.W.

2d 241, 242, writ refused. In the Fields case the only issue submitted was whether the spouses were married at the time of conveyance to the wife. That issue, necessarily referable to the independent ground was held not to constitute the basis for a judgment that the land was the wife's separate property. Although not cited by any of the parties, that case governs our disposition.

An ultimate issue of fact here is whether John P. Kitchens intended to make a gift to his wife Inez, so as to constitute the ranch lands her separate property in law. That fact issue has not been resolved. The net effect of the jury findings, under the Fields decision, is that facts exist which "raise an issue" as against the statutory presumption.

 The burden of proof on the issue is upon the party claiming the property was the wife's separate estate. John Hancock Mut. Life Ins. Co. v. Bennett, 133 Tex. 450, 128 S.W.2d 791, 795; Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226, 227; Presidio Min. Co. v. Bullis, 68 Tex. 581, 4 S.W. 860, 862 (partition); and cases cited, 30 Tex.Jur.2d, Sec. 181, p. 283, 284.

We briefly distinguish the cases urged by appellee to the contrary: Janes v. Gulf Production Co., Tex.Civ.App., 15 S.W.2d 1102, writ ref., involved a deed of gift from father to daughter. Emery v. Barfield, Tex. Civ.App., 156 S.W. 311 was reversed by the Supreme Court, 107 Tex. 306, 177 S.W. 952. Daggett v. W. B. Worsham & Co., Tex.Civ.App., 264 S.W. 180, 183, no writ, applied California law under which the presumption was that a deed to the wife vested title in her as her separate property. In Gillespie v. Gillespie, Tex.Civ.App., 110 S.W.2d 89, 91, writ dism., it was undisputed the property was acquired by the grantee before marriage, and the consideration was owned and held by him before marriage.

The jury findings are evidentiary and not ultimate. The issue has not been decided. It has not been waived, nor is it deemed found in support of the judgment under Rule 279. Neither the trial court nor we may decide it from the record as a matter of law. It is not necessary to pass upon appellants' other points.

This segment of the case is severed, the judgment as to this phase of the case is reversed and the cause remanded. This necessarily requires reversal and remand of the partition decree. Appellants' points 2, 3, 4 and 11 are overruled. It is not necessary to consider others not directly decided herein. Affirmed in part, and in part reversed and remanded.