**CITIZENS NATIONAL BANK OF BEAUMONT, Appellant,**

v.

**W. J. FRANCIS, Appellee.**

No. 6951.

Court of Civil Appeals of Texas.

Beaumont.

April 18, 1968.

Rehearing Denied May 8, 1968.

Orgain, Bell & Tucker, Beaumont, for appellant.

Watson & Williams, Beaumont, for appellee.

PARKER, Justice.

Citizens National Bank of Beaumont (hereinafter referred to as Bank) instituted this suit against W. J. Francis to recover

on two promissory notes, one dated April 15, 1964 in the sum of $2,550.00 and the other dated June 11, 1964 in the sum of $480.00. Francis admitted executing the notes in favor of the Bank. By way of cross action for damages, Francis alleged that the Bank wilfully, wantonly and maliciously, and without probable cause, refused to honor five certain checks drawn on the Beaumont Chimney Co., Special Account, when there were sufficient funds on deposit to cover the same, asserting that by reason of such refusal to honor the checks, Francis had been subjected to criminal prosecution, that his reputation had been damaged in the sum of $50,000.00, that he was entitled to $300,000.00 punitive damages, and that his health and earnings had been affected to his damage in the sum of $500,000.00. The proceeds of the two notes were deposited in said Bank to the credit of Beaumont Chimney Co. Bank answered by general denial and alleged that the account was open for a special purpose, to-wit, to finance accounts for labor and material to be used in the performance of a contract between W. J. Francis, d/b/a Beaumont Chimney Co., and the City of Alvin, which contract had been assigned to the Bank as security for the loans evidenced by the notes sued upon. Bank asserted that it acted in good faith and in the belief that it was exercising its rights under the understanding and agreement with Francis with respect to the drawing of checks on the account and that the checks had been returned and stamped "purpose not authorized."

Trial was before a jury. At the conclusion of the evidence, Bank filed its motion for directed verdict on the main action for recovery of the sums due on the promissory notes as well as motions for directed verdict against plaintiff on his cross action. The motion for directed verdict for the sum of $2,651.44 on the notes was granted and there is no appeal from that part of the judgment. Bank's motion for directed verdict on the cross action was overruled. Judgment was entered upon the verdict of the jury, finding that the actual damage to Francis on his

cross action was $40,000.00 and the exemplary damages to Francis on his cross action was $10,000.00, allowing a credit of $2,651.-44 together with interest thereon to be deducted from the $50,000.00 recovery of Francis against the Bank on his cross action.

Francis admitted in open court that he was justly indebted to the Bank in the sum of $2,651.44, together with interest thereon, this being the indebtedness represented by his notes to the Bank. There is no appeal from this part of the judgment.

As to each of the checks the bank refused to honor, special issues were submitted similar to Special Issue No. 1 as to each of such checks. Special Issue No. 1:

Do you find from a preponderance of the evidence that the failure of Citizens National Bank to honor the check dated June 13, 1964, payable to W. J. Francis, in the sum of $85.67 was wrongful?

The court defined the term "wrongful" as follows:

By the term "wrongful", as used in this Charge, is meant in bad faith and without any justifiable cause.

The jury's affirmative answers to the issues were deemed sufficient to support the recovery of not only actual but exemplary damages. No additional issues were submitted as a predicate for the recovery of exemplary damages. Accordingly, the entire judgment of the trial court hinges on the findings of these issues. The basic point of error before this court is whether or not the evidence raised the issue that the Bank's failure to honor the checks was "in bad faith and without any justifiable cause."

On April 14, 1964, Francis opened an account with the Bank in the name of Beaumont Chimney Co., Special Account, depositing $2,500.00, being cash proceeds from his note of $2,550.00, payable to such Bank. His contract with the City of Alvin was assigned as collateral security to the Bank. Prior to that date, he had done no business

with the Bank. This was an account for special purposes, with a special agreement pertaining to that account. Francis testified:

A. There was an agreement that some officer would have to approve the check if I spent it on anything besides the job, I'd have to bring the check in personally; otherwise, if I said wages was what it was for and it was spent for the job, that was all that was necessary. Now, that covers a lot of territory, that there yes or no business.

Q. There was an agreement that some officer would have to approve it?

A. If I wrote the check otherwise—other than my job, yes. If I wrote—if I wrote you a check, I would have to get it approved by the bank before I could cash it, and I had to go in personally to do that.

Q. Now, you had a contract at that time with the City of Alvin, did you not?

A. I did.

Q. A contract to do what kind of work?

A. To sandblast and repaint the inside of 100-gallon water storage tank.

Q. How long was it contemplated that it would take to do that job?

A. Approximately ten days.

Q. Did you start work on it?

A. I did.

Q. Did you agree with the fact that you would complete the work?

A. I did.

Q. That was part of the agreement, was it not, that—

A. It was.

Q.—you would start work for the City of Alvin and you would complete it?

A. It was.

Q. The reason for that agreement was that that was where the bank was going to get repaid on this loan?

A. It was.

Q. Did you ever complete that contract?

A. No, sir.

Q. When did you start work on it?

A. About the middle of April—somewhere around April the 10th.

Q. About when did you start?

A. Somewhere around April the 10th.

Q. 1964?

A. 1964, yes, sir.

Q. How long did you work in April?

A. Until about the 24th of April—between the 24th and the 28th.

Q. Did you become ill at that time?

A. I did.

Q. And went to the hospital?

A. I did.

Q. And what happened to the job in April after you became ill? Did work go on?

A. No, sir. The job came at a standstill because my whole crew was ill.

Q. Did you spend all the money in that account there in April?

A. I did. In fact, I overdrawed the account Seventy-something Dollars.

Q. By the end of April, you had spent all of the money in the account?

A. Yes, sir.

Q. And the job had not been completed?

A. No, sir.

Q. And the agreement that you had with the bank was that you would complete the job?

A. It was.

Q. Then along in June did you borrow some more money from the Citizens National Bank?

A. I did.

Q. How much money did you borrow in June?

A. I wanted to borrow $400, and they said they would loan me $480 to cover my overdrawals and still give me enough money to finish the job.

Q. And was that on June the 11th when you signed this next note?

A. I think that's the date, yes, sir.

Q. At that time did you or not agree that you would go back and complete this work?

A. I did.

Q. And did the bank loan you the money because of your agreement that would go back and complete the job?

A. They did.

Q. About what time of day on June the 11th was it that you borrowed this additional $480?

A. I'd say I was in the bank in the morning of that day. When the loan was completed, I don't exactly know what hour that was.

Q. That was on June the 11th?

A. Yes, sir.

The bonding company completed the contract Francis had with the City of Alvin. This cost the City of Alvin $1,626.00, but the amount it cost the bonding company is not in the record.

From the Bank's standpoint the evidence was that the agreement with Francis was that all checks would be drawn only for payment of labor and materials on Francis' job with the City of Alvin, and that some officer of the Bank would have to approve the checks after being satisfied each check was drawn only for payment of labor and materials on Francis' job with the City of Alvin. Francis' contract with the City of Alvin was to sandblast and repaint a water storage tank for which he was to be paid $3,142.00. Francis represented to the Bank it would take approximately ten days to complete this contract.

■ Without question, this was a special account whether Francis' version of the agreement with the Bank being accepted as true or the Bank's version of the agreement being taken as true. Being a special account, the Bank had to satisfy itself that each check of Francis was for the payment of labor and materials on the City of Alvin job.

Bank had no right to apply funds or honor checks drawn on the deposit to the credit of Beaumont Chimney Co., Special Account, except to payment of labor and materials on the City of Alvin job. It had no legal right to make or permit any other disposition of the deposit. First State Bank & Trust Co. v. First Bank of Truscott, 32 S.W. 2d 494 (Tex.Civ.App.1930, writ ref.); Cotulla State Bank v. Herron, 191 S.W. 154 (Tex.Civ.App. 1917).

■ Francis agreed with the Bank that he would complete the work on the Alvin job. From the proceeds of that job, the Bank was to be repaid its loan. The job was not completed. It was unfortunate that Francis became ill from lead poisoning and had to cease work on the tank for some 40 days. On May 19, 1964, the City had notified the bonding company that it expected it to complete the contract. Late in the day on June 11, 1964, the same day the Bank had advanced this last money to Mr. Francis, Mr. Brinnick of the City of Alvin phoned an officer of the Bank and told him that Mr. Francis had pulled his men off the job and apparently work was not going to proceed any further. It was the understanding of the Bank that the monies from the last loan would be applied only for labor and material from June 11 forward, "and that apparently there was no work going on after June 11, so we didn't feel that the expen-

ditures were authorized." The checks issued on that date and thereafter were, therefore, returned. The promise of Francis to complete the contract with the City of Alvin was an essential part of the agreement and contract between the Bank and him. No contrary intent is shown. As stated by Mr. Francis, the reason for the Bank agreeing to loan him the money originally as well as the second loan was that the Bank was going to get repaid by the proceeds of the job Francis had with the City of Alvin. The breach of this dependent covenant in the contract and agreement between the Bank and Mr. Francis entitled the Bank to treat the contract between the City of Alvin and Francis as having been abandoned. As said in Investors' Utility Corporation v. Challacombe, Tex.Civ.App., 39 S.W.2d 175:

> Where the promise goes to the entire consideration of the contract, and a contrary intent is not shown, such covenant is dependent, and a failure of the promisor to comply therewith deprives him of the right to demand enforcement of the contract. Rigsby v. Boone County State Bank (Tex.Civ.App.) 241 S.W. 207, par. 3; 10 Tex.Jur. 328, 13 C.J. 571; Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 787; Wilbanks v. Selby (Tex.Civ.App.) 227 S.W. 371; Smith v. Carpenter (Tex. Civ.App.) 257 S.W. 637; Garrison v. Cooke, 96 Tex. 228, 72 S.W. 54, 61 L.R.A. 342, 97 Am.St.Rep. 906; Presidio Mining Co. v. Bullis, 68 Tex. 581, 590, 4 S.W. 860.

As far as the Bank was concerned, it believed Francis was not completing the contract with the City of Alvin. This failure breached his contract with the Bank. The Bank treated this as such a breach on June 11, 1964. It considered it was under no duty to pay any checks drawn on the special account.

There is no evidence that the Bank "acted in bad faith and without any justifiable cause." The other points of error of Bank are not passed on herein for the reason that the foregoing disposes of this suit.

Judgment is here rendered that Citizens National Bank of Beaumont do have and recover of and from W. J. Francis $2,651.44, together with interest thereon at the rate of 10% per annum, from May 19, 1967, but the judgment of the trial court is otherwise reversed and rendered so that W. J. Francis takes nothing on his cross action against Citizens National Bank of Beaumont.